Commonwealth *vs.* Eugene Sherry
(and eight companion cases[1]).

Suffolk.   March 4, 1982. — July 1, 1982.

Present: Hennessey, C.J., Liacos, Abrams, Nolan, & O'Connor, JJ.

*Rape. Practice, Criminal,* Required finding, Mistrial, Instructions to
jury, Verdict. *Evidence,* Fresh complaint, Impeachment of credibili-
ty, Relevancy and materiality. *Witness,* Credibility.

At the trial of indictments charging rape, the evidence with respect to
   the existence of the essential elements of the crime charged was suffi-
   cient to warrant denial of the defendants' motions for a required find-
   ing of not guilty on each of the indictments. [686-688]
Defendants at the trial of indictments charging kidnapping and rape were
   not entitled to a mistrial on the basis of any scheme or design by the
   prosecutor to trap a defense witness by reason of the circumstances
   that the witness, who had been instructed by the prosecutor before
   trial not to use the word "drunk" if she testified, upon testifying during
   cross-examination that she was unsure whether she had told a certain
   detective whether one of the defendants was "falling down drunk,"
   was then impeached by means of a written communication from her to
   the detective containing such a statement, and that the prosecutor,
   during closing argument, referred to the witness's testimony as illustra-
   tive of a conspiracy to protect the defendants, where no unethical or
   dishonest conduct by the prosecutor was apparent and where closing
   argument had been confined to the evidence and the fair inferences
   therefrom. [688-690]
A rape victim's delay of several hours in making statements which were
   later admitted in evidence at a criminal trial under the doctrine of
   fresh complaint did not, in the circumstances, render the admission of
   the statements an abuse of judicial discretion. [690-691]
At a rape trial it lay within the judge's discretion to exclude the victim's
   prior statements at a "rape crisis seminar" concerning the victim's be-
   ing raped in the past and describing how she would extricate herself
   from a rape situation where the statements, although inconsistent

---

[1] Two are against Eugene Sherry, three are against Arif Hussain, and
three are against Alan Lefkowitz.

with her testimony as to her confusion, disorientation and inability to react to the defendants' conduct, were not relevant to any contested issue in the case but were offered only to impeach her credibility generally. [691-693]

At the trial of indictments charging aggravated rape pursuant to G. L. c. 265, § 22 (a), by reason either of joint enterprise or of kidnapping, the judge did not err in instructing the jury that they could find the defendants guilty of unaggravated rape under § 22 (b), inasmuch as the statute provided that unaggravated rape is a lesser included offense, and where the evidence afforded a rational basis for the jury to find that the defendants committed unaggravated rape. [694-695]

At a rape trial the judge's failure to give two instructions exactly as requested was not error where the judge's charge to the jury, considered as a whole, adequately stated the elements of proof required for a conviction of rape. [696-697]

Three defendants who had been tried on three charges each of aggravated rape (by reason either of joint enterprise or kidnapping) and one charge of kidnapping, and who had been found not guilty of kidnapping, but guilty on three charges each of unaggravated rape, were not entitled to have the jury's verdicts set aside either as inconsistent or as legally impossible; however, this court vacated the conviction of each defendant on two of the rape charges as contrary to the weight of the evidence, in the absence of three separate rapes by each defendant. [697-700]

INDICTMENTS found and returned in the Superior Court Department on January 8, 1981.

The cases were tried before *Steele*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Patricia A. O'Neill* for Eugene Sherry.

*Kenneth M. Goldberg* for Arif Hussain.

*Joseph J. Balliro* (*Juliane Balliro* with him) for Alan Lefkowitz.

*Michael J. Traft,* Assistant District Attorney (*Kathleen Coffey,* Assistant District Attorney, with him) for the Commonwealth.

LIACOS, J.   Each defendant was indicted on three charges of aggravated rape (G. L. c. 265, § 22) and one charge of kidnapping (G. L. c. 265, § 26).  A jury acquitted the de-

fendants of kidnapping and convicted them of so much of each of the remaining three indictments as charged the lesser included offense of rape without aggravation. Each defendant was sentenced on each conviction to be imprisoned at the Massachusetts Correctional Institution, Walpole, for a term of not more than five years nor less than three years. Six months of the sentence was to be served, with the balance of the sentence to be suspended. On completion of the sentence served, each defendant was to be placed on probation for the term of one year. The sentences on the second and third convictions of each defendant were to be served concurrently with the first sentence. The trial judge ordered a stay of execution of sentence, pending appeal. The defendants appeal from their convictions and from the denial of their posttrial motions to set aside the verdicts and to enter findings of not guilty. Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979). We transferred the appeals here on our own motion. We now affirm each of the defendants' convictions on one charge of rape and vacate each defendant's convictions on the other two charges of rape.

The defendants contend that the trial judge erred (1) by denying their motions for a required finding of not guilty; (2) by denying their motions for a mistrial alleging prosecutorial misconduct; (3) by admitting hearsay evidence of the victim's fresh complaint and refusing to admit other hearsay statements of the victim; and (4) in instructing the jury on the lesser included offense of unaggravated rape and refusing to instruct the jury according to the defendants' requests. The defendants also contend that the jury verdicts were impossible as a matter of law, so that a new trial must be granted or the verdicts set aside. We consider each of these claims of error.

There was evidence of the following facts. The victim, a registered nurse, and the defendants, all doctors, were employed at the same hospital in Boston. The defendant Sherry, whom the victim knew professionally, with another doctor was a host at a party in Boston for some of the hospital

staff on the evening of September 5, 1980. The victim was not acquainted with the defendants Hussain and Lefkowitz prior to this evening.

According to the victim's testimony, she had a conversation with Hussain at the party, during which he made sexual advances toward her. Later in the evening, Hussain and Sherry pushed her and Lefkowitz into a bathroom together, shut the door, and turned off the light. They did not open the door until Lefkowitz asked them to leave her in peace.[2] At various times, the victim had danced with both Hussain and Sherry.

Some time later, as the victim was walking from one room to the next, Hussain and Sherry grabbed her by the arms and pulled her out of the apartment as Lefkowitz said, "We're going to go up to Rockport." The victim verbally protested but did not physically resist the men because she said she thought that they were just "horsing around" and that they would eventually leave her alone.[3] She further testified that, once outside, Hussain carried her over his shoulder to Sherry's car and held her in the front seat as the four drove to Rockport. En route, she engaged in superficial conversation with the defendants. She testified that she was not in fear at this time. When they arrived at Lefkowitz's home in Rockport, she asked to be taken home. Instead, Hussain carried her into the house.

Once in the house, the victim and two of the men smoked some marihuana, and all of them toured the house. Lefkowitz invited them into a bedroom to view an antique bureau, and, once inside, the three men began to disrobe. The victim was frightened. She verbally protested, but the three men proceeded to undress her and maneuver her onto

[2] The victim testified that after this incident she complained to a Dr. Sheskey about the defendant Hussain's behavior. Dr. Sheskey corroborated this testimony.

[3] The victim testified that she was not physically restrained as they rode down an elevator with an unknown fifth person, or as they walked through the lobby of the apartment building where other persons were present.

the bed. One of the defendants attempted to have the victim perform fellatio while another attempted intercourse. She told them to stop. At the suggestion of one of the defendants, two of the defendants left the room temporarily. Each defendant separately had intercourse with the victim in the bedroom. The victim testified that she felt physically numbed and could not fight; she felt humiliated and disgusted. After this sequence of events, the victim claimed that she was further sexually harassed and forced to take a bath.

Some time later, Lefkowitz told the victim that they were returning to Boston because Hussain was on call at the hospital. On their way back, the group stopped to view a beach, to eat breakfast, and to get gasoline. The victim was taken back to where she had left her car the prior evening, and she then drove herself to an apartment that she was sharing with another woman.

The defendants testified to a similar sequence of events, although the details of the episode varied significantly. According to their testimony, Lefkowitz invited Sherry to accompany him from the party to a home that his parents owned in Rockport. The victim was present when this invitation was extended and inquired as to whether she could go along. As the three were leaving, Sherry extended an invitation to Hussain. At no time on the way out of the apartment, in the elevator, lobby, or parking lot did the victim indicate her unwillingness to accompany the defendants.

Upon arrival in Rockport, the victim wandered into the bedroom where she inquired about the antique bureau. She sat down on the bed and kicked off her shoes, whereupon Sherry entered the room, dressed only in his underwear. Sherry helped the victim get undressed, and she proceeded to have intercourse with all three men separately and in turn. Each defendant testified that the victim consented to the acts of intercourse.

*Motions for a required finding of not guilty.* At the close of the Commonwealth's case, the defendants moved for a required finding of not guilty on each of the indictments.

Mass. R. Crim. P. 25, 378 Mass. 896 (1979). The defendants argued that there was no evidence of force or threat of bodily injury, a required element of the crime of rape. The defendants also argued that aggravating circumstances, i.e., kidnapping or rape by joint enterprise, had not been proved. The judge denied their motions.

The defendants contend that, at the close of the Commonwealth's case, see *Commonwealth* v. *Wilborne*, 382 Mass. 241, 244 (1981), the evidence was insufficient to persuade a rational trier of fact of each of the elements of the crime charged beyond a reasonable doubt. We consider whether the evidence, in the light most favorable to the Commonwealth, "is sufficient to permit the jury to infer the existence of the essential elements of the crime charged; and whether the evidence and the inferences permitted to be drawn therefrom are sufficient to bring minds of ordinary intelligence and sagacity to the persuasion of guilt beyond a reasonable doubt." *Commonwealth* v. *Casale*, 381 Mass. 167, 168 (1980). The defendants may prevail on this claim of error only if we are convinced that no "rational trier of fact could have found the essential elements of [rape] beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979).

The essence of the crime of rape, whether aggravated or unaggravated, is sexual intercourse with another compelled by force and against the victim's will or compelled by threat of bodily injury. See G. L. c. 265, §§ 22 (*a*) & (*b*). At the close of the Commonwealth's case, the evidence viewed in the light most favorable to the Commonwealth established the following. The victim was forcibly taken from a party by the three defendants and told that she would accompany them to Rockport. Despite her verbal protestations, the victim was carried into an automobile and restrained from leaving until the automobile was well on its way. Notwithstanding her requests to be allowed to go home, the victim was carried again and taken into a house. The three defendants undressed and began to undress the victim and to

sexually attack her in unison over her verbal protestations. Once they had overpowered her, each in turn had intercourse with her while the others waited nearby in another room.

The evidence was sufficient to permit the jury to find that the defendants had sexual intercourse with the victim by force and against her will. The victim is not required to use physical force to resist; any resistance is enough when it demonstrates that her lack of consent is "honest and real." *Commonwealth* v. *McDonald,* 110 Mass. 405, 406 (1872). The jury could well consider the entire sequence of events and acts of all three defendants as it affected the victim's ability to resist. *Commonwealth* v. *Therrien,* 383 Mass. 529, 538-539 (1981). *Commonwealth* v. *Chapman,* 8 Mass. App. Ct. 260, 262 (1979). Cf. *Commonwealth* v. *Burke,* 105 Mass. 376 (1870). There was no error in the denial of the defendants' motions.

*Motions for a mistrial.* The defense called as a witness one Barbara Gariepy, the victim's nursing supervisor at the hospital. On cross-examination of Gariepy, the prosecutor asked her a series of questions pertaining to the defendant Sherry's sobriety. The prosecutor asked Gariepy if she told a certain detective that Sherry was "falling down drunk." Gariepy stated that she did not know if she had used that terminology. The prosecutor then confronted the witness with a written communication from her to the detective stating that Sherry was "falling down drunk."

The following day of trial, defense counsel moved for a mistrial, alleging that the prosecutor had instructed Gariepy before trial not to use the word "drunk" if she should testify. Thus, the defendants claimed the prosecutor intentionally created the prospect of her impeachment by a prior inconsistent statement. The judge questioned Gariepy in his lobby, and she confirmed that the prosecutor had instructed her not to use the term "drunk" while testifying, because "drunk" was a conclusion or a judgment. She stated that, while testifying, she attempted to describe how Sherry appeared and that she became confused when directly asked whether Sherry was drunk.

The judge concluded there was nothing dishonest or unethical in the prosecutor's conduct and denied the motion for mistrial. The judge also denied the defense motion to strike Gariepy's testimony on cross-examination. During closing argument, the prosecutor restated Gariepy's testimony regarding Sherry's sobriety as illustrative of a hospital-wide conspiracy designed to protect the doctors. The prosecutor also commented on the unbelievability of the testimony of other defense witnesses, implying that they were all "closing . . . the ranks" behind the doctors. Defense counsel again moved for a mistrial based on the prosecutor's comment on Gariepy's prior inconsistent statement.

We find no error in the denial of the motion for a mistrial. The record does not indicate any scheme or design by the prosecutor to confuse or trap the witness. We cannot say that the trial judge erred in determining that the prosecutor's cross-examination of Gariepy was neither dishonest nor unethical. It appears that the advice the prosecutor gave Gariepy was designed to avoid the strictures of the so called opinion rule. Whether the advice was well taken or not, the judge could correctly conclude that this incident was not ground for a mistrial. As to the argument, since the evidence had not been excluded, *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977), it was fair for the prosecutor to comment on it. See *Commonwealth* v. *Dilone*, 385 Mass. 281, 286 (1982); S.J.C. Rule 3:08, PF-13 (a), as appearing in 382 Mass. 802 (1981). "Counsel may argue as to the evidence and the fair inferences from the evidence." *Commonwealth* v. *Earltop*, 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring), citing *Leone* v. *Doran*, 363 Mass. 1, 18 (1973). Arguably, Gariepy sought to minimize any testimony damaging to the defendants and thus the prosecutor, in his closing, did not refer to facts which he knew to be untrue. See *Leone* v. *Doran, supra.* "This is not a case where a criminal conviction has been obtained by the knowing use of false testimony and, consequently, such cases cited by the defendant as *Napue* v. *Illinois*, 360 U.S. 264 (1959), and *Giglio*

v. *United States,* 405 U.S. 150 (1972), are not controlling."
*Commonwealth* v. *Gilday,* 367 Mass. 474, 490 (1975).
Compare *Commonwealth* v. *Daigle,* 379 Mass. 541, 546
(1980) (unintentional use of false testimony not reviewed
under strict standard of materiality). We note further that
the judge clearly instructed the jury on the use of impeach-
ment testimony.[4]

*Evidence of fresh complaint.* The defendants contend
that the judge erred in admitting testimony indicating that
the victim made a fresh complaint of the rape to several per-
sons. The defendants do not dispute the general principle
that "testimony reporting statements made by the victim
shortly after [a rape] are universally admitted to corrobo-
rate the victim's testimony." *Commonwealth* v. *Bailey,* 370
Mass. 388, 392 (1976). Rather, the defendants argue, in
substance, that the victim's delay in making the statements
disqualifies the complaints as being admissible, particularly
in light of opportunities she may have had to complain
while still in the company of the defendants.

The evidence of fresh complaint that was admitted was as
follows. The victim's roommate testified that the victim
related the facts of the rape to her in their apartment in the
early hours of the morning following the incident. Another
friend of the victim testified that the victim told her about
the rape over the telephone at approximately 9 A.M. on the
same morning. The police officer who spoke with the vic-
tim the day following the incident testified as to what the
victim told him about the rape, and a hospital report recit-
ing the events that occurred was also admitted in evidence.

---

[4] At trial, the defendants also objected to another comment made by the
prosecutor during his closing argument. The prosecutor stated: "And
don't you think that if there wasn't sperm in that vagina they [the defend-
ants] would have denied even having sex." Defense counsel objected, and
the judge instructed the jury that they "should disregard that remark." In
his instructions to the jury, the judge also stated that "the statements and
arguments of counsel are not evidence." The judge's action in instructing
the jury to disregard the remark, and his instructions to the jury that argu-
ments are not evidence, were sufficient to cure any conceivable prejudice.
See *Commonwealth* v. *Dougan,* 377 Mass. 303, 312 (1979).

Although the judge made no explicit preliminary findings whether the statements were sufficiently prompt to constitute fresh complaint, see *Commonwealth* v. *Cleary*, 172 Mass. 175, 177 (1898), the record indicates that the judge looked at all the circumstances of the case and concluded that on these particular facts the victim's complaints were reasonably prompt. The judge instructed the jury that they could reject the proffered evidence as being corroborative of the victim's testimony if they did not find that the complaints were made "reasonably promptly." See *Commonwealth* v. *McGrath*, 364 Mass. 243, 250 (1973).

We cannot say that the judge abused his discretion. There is no rule that requires a victim to complain of a rape to strangers in an unfamiliar place while still in the company of the alleged rapist. The actions of the victim were reasonable in the particular circumstances of the case. Cf. *Commonwealth* v. *Izzo*, 359 Mass. 39, 42-43 (1971). The victim first reported the rape to her friend and roommate within a few hours after being dropped off by the defendants. There was no error.[5]

*Exclusion of victim's prior out-of-court statements.* Defense counsel sought a pretrial ruling regarding the admissibility of two out-of-court statements of the victim. A voir dire was conducted, during which one Cheryl Rowley testified that the victim had made statements at a rape crisis seminar. Rowley testified that the victim stated at the seminar "that she had been raped in the past, and that she had had a couple of occasions where she was almost raped.

---

[5] The defendants' argument that spontaneity is the linchpin of the fresh complaint exception to the hearsay rule is misplaced. Unlike the practice of some States, evidence of a fresh complaint in a rape case is not admitted as part of the res gestae in this Commonwealth. See *Commonwealth* v. *Cleary*, 172 Mass. 175, 176-177 (1898). Rather, admission of the evidence is justified on the ground that the victim's failure to make a prompt complaint might be viewed by the jury as inconsistent with a rape charge, and, in the absence of such evidence, the jury might assume that no complaint was made. *Commonwealth* v. *Bailey*, 370 Mass. 388, 392 (1976). Thus, "the ground of admission is held to be the corroboration of the testimony of the complainant as a witness." *Glover* v. *Callahan*, 299 Mass. 55, 57 (1937).

And she told us about different ways that she got out of be-
ing raped — the times that she did." Rowley testified fur-
ther that "[t]he one that I remembered the most was that
she had been taken to a sand pit by some man, and he was
attempting to rape her, and she said that she got out of it by
what she said, 'Jerking the guy off.'" The trial judge ruled
that this evidence would not be admitted.

The defendants argue that the judge erred in light of our
decision in *Commonwealth* v. *Bohannon*, 376 Mass. 90
(1978). There was no error. There was no showing that
the statements were false or even an exaggeration of the
truth; hence, the *Bohannon* case is inapplicable. Without
evidence of falsity, the statements become irrelevant to any
issue in the case, including the credibility of the complain-
ant. See *Commonwealth* v. *Bohannon, supra* at 95 (evi-
dence of prior false accusations of specific crime that is sub-
ject of trial may damage complainant's credibility).

The defendants further argue that the judge's exclusion of
the statement concerning how the victim would extricate
herself from a rape situation constitutes reversible error. At
trial, the defendants argued that, since the victim would
testify that she was confused, disoriented, and unable to
react to the acts of the defendants, the prior statement was
inconsistent and, thus, directly affected her credibility.
Defense counsel was permitted on cross-examination of the
victim to ask the following:

DEFENSE COUNSEL: "Do you recall . . . saying at the Rape
Crisis Seminar, that you attended, that you could never be
raped because if anybody tried to rape you, all you'd do was
reach down and jerk him off."

PROSECUTOR: "Objection, your Honor."

JUDGE: "I'll take the answer. Do you remember saying
that?"

WITNESS: "No, I don't."

DEFENSE COUNSEL: "You don't remember saying that?"

WITNESS: "No, I don't."

Some time later at trial, defense counsel sought, in direct ex-
amination, to introduce Rowley's testimony, as stated in the

voir dire, to impeach the victim's credibility. The judge excluded the question, apparently on the basis that the evidence related to a collateral matter. The defendants claim that this ruling was in error and denied them their right to present their defense.

"Whether evidence is legally relevant is a question which is generally left to the discretion of the trial judge." *Commonwealth* v. *Chasson*, 383 Mass. 183, 187 (1981). The trial judge, in his sound discretion, may exclude evidence if the danger of confusion, unfair prejudice, or undue consumption of time in trial of collateral issues outweighs the probative worth of the evidence offered. *Robitaille* v. *Netoco Community Theatre*, 305 Mass. 265, 267-268 (1940). In the circumstances of this case, we cannot say that the judge abused his discretion.

The out-of-court statement of the victim was hearsay and was offered only to impeach her credibility generally and not as to her description of the events in issue. Consequently, Rowley's testimony was collateral to all issues in the case, save the victim's credibility. The victim's testimony on matters not relevant to contested issues in the case cannot, as of right, be contradicted by extrinsic evidence. P.J. Liacos, Massachusetts Evidence 135 (5th ed. 1981). See, e.g., *Commonwealth* v. *Chase*, 372 Mass. 736, 746-748 (1977).[6]

---

[6] Counsel for the defendants repeatedly asserted during trial that the proffered evidence did not fall within the rape-shield statute. G. L. c. 233, § 21B. The record is unclear regarding the precise grounds on which the evidence was excluded, although there is some indication that the judge considered the rape-shield statute in making his ruling.

The defendant Hussain argues on appeal that the rape-shield statute is unconstitutional because it absolutely bars evidence of the rape victim's sexual conduct. The defendant, in his brief, alleges that "it is clear that testimony revealing her reputation and also the defendant's knowledge of her reputation for engaging in *this type of sexual activity under similar circumstances* would clearly have been relevant to the issues of whether her resistance was honest and real and whether the defendant possessed the requisite criminal intent" (emphasis added). We do not reach the issue whether such evidence would be relevant, or whether, in that context, the statute's bar to reputation evidence would be unconstitutional. The defendant did not seek to introduce reputation evidence in the lower court.

*Jury charge on unaggravated rape.* The defendants contend that the judge erred in charging the jury that they could find the defendants guilty of unaggravated rape. The defendants objected to the charge, arguing that the Commonwealth's theory throughout the case was an aggravated rape by joint enterprise or kidnapping. The judge, however, stated that the jury could find the defendants guilty of unaggravated rape if there was insufficient evidence of the aggravating factors, viz., kidnapping or joint enterprise, but that rape was otherwise proved. The defendants, on appeal, rely on two theories for reversal: first, that the defendants' convictions on a charge not tried constituted a denial of procedural due process; second, that the trial judge erred in instructing the jury on unaggravated rape because the greater offense of aggravated rape did not require the jury to find a disputed factual element not required for the lesser included offense.

General Laws c. 265, § 22, as appearing in St. 1980, c. 459, § 6, states in part that "(*a*) Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury and if either such sexual intercourse or unnatural sexual intercourse results in or is committed with acts resulting in serious bodily injury, or is committed by a joint enterprise, or is committed during the commission or attempted commission of [certain felonies] shall be punished by imprisonment in the state prison for life or for any term of years. . . . (*b*) Whoever has sexual intercourse or unnatural sexual intercourse with a person and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury, shall be punished by imprisonment in the state prison for not more than twenty years . . . . *For the purposes of prosecution, the offense described in subsection (b) shall be a lesser included offense to that described in subsection (a)*" (emphasis supplied).

"It has long been held that lesser included offenses are those necessarily included in the offense as charged." *Com-*

*monwealth* v. *Rodriguez,* 11 Mass. App. Ct. 379, 380 (1981), citing *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871). The offense stated in G. L. c. 265, § 22 (*b*), is by its exact description, necessarily included in § 22 (*a*). In order to convict under § 22 (*a*), all the elements of § 22 (*b*) must be found, plus an additional aggravating factor. Thus, as determined by the Legislature, the unaggravated rape described in § 22 (*b*) is a lesser included offense of the aggravated rape described in § 22 (*a*). We fail to perceive how the defendants were denied their right to procedural due process by the judge's charge. See *Commonwealth* v. *Eaton,* 2 Mass. App. Ct. 113, 117-118 (1974), and cases cited. Contrary to the claim of the defendants, the evidence provided a rational basis for jury verdicts that the defendants committed the crime of unaggravated rape. See *Commonwealth* v. *McKay,* 363 Mass. 220, 228 (1973). On the state of the evidence, the jury were warranted in concluding that the victim did not consent to intercourse with any of the defendants. The jury could have accepted or rejected the evidence that the defendants were engaged in a joint enterprise, or raped the victim in the course of a kidnapping. The charge properly put the factual issues raised by the evidence to the jury. This was not error.[7]

---

[7] The defendants, however, rely on *Sansone* v. *United States,* 380 U.S. 343, 349-350 (1965), and further argue that a charge for the lesser included offense could not be given because the defendants did not dispute the alleged joint enterprise. We find no merit in the defendants' assertion that this case falls within the ambit of *Sansone* simply because the defendants now claim that they did not contest the joint enterprise element of the crime of aggravated rape. The case of *United States* v. *Harary,* 457 F.2d 471 (2d Cir. 1972), on which the defendants rely is also inapposite. There the charge was bribery, and the defense was entrapment. Additionally, the defendant admitted the specific intent to bribe. See 18 U.S.C. § 201(b) (2) (1976). The court concluded, therefore, that the lesser offense of giving a gratuity for an official act performed or to be performed (18 U.S.C. § 201[f] [1976]), was not in issue, and a conviction of that lesser offense could not stand in light of the acquittal of the bribery charge. Here the defendants did not admit to the existence of a joint enterprise. To the contrary, they contested this issue and, in their motion for a required finding of not guilty, the defendants argued that there was insufficient evidence to establish a joint venture.

*Instructions to the jury.* The defendants next contend that because the judge failed to give two instructions exactly as requested, the judge's jury charge, considered as a whole, was inadequate and the cause of prejudicial error. The requested instructions in their entirety are set out in the margin.[8]

The defendants were not entitled to any particular instruction as long as the charge as a whole was adequate. See *Commonwealth* v. *Aronson*, 330 Mass. 453, 457-458 (1953) (impression created by charge as whole constitutes test of adequacy); *Commonwealth* v. *MacDougall*, 2 Mass. App. Ct. 896 (1974) (judge need not grant specific requested instructions as long as substance is covered). Cf. *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 540 (1971).

The instructions given by the trial judge placed before the jury the essential elements of the crime required to be proved. The judge instructed the jury that intercourse must be accomplished with force "such [as] to overcome the woman's will; that it be sufficient to accomplish the man's purpose of having sexual intercourse against her will" or by threats of bodily harm, inferred or expressed, which engendered fear "reasonable in the circumstances . . . so that it was reasonable for her not to resist." He later reiterated that "[t]he act of the defendant must have been against the will, that is without the woman's consent, and there must have been sufficient force used by him to accomplish his purpose."

These instructions correctly stated the elements of proof required for a rape conviction. See *Commonwealth* v.

---

[8] "Unless you find beyond a reasonable doubt that [the victim] clearly expressed her lack of consent, or was so overcome by force or threats of bodily injury that she was incapable of consenting, and unless you find beyond a reasonable doubt that the accused had actual knowledge of [the victim's] lack of consent, then you must find them not guilty."

"If you find that [the victim] had a reasonable opportunity to resist being taken to Rockport, Massachusetts, from the apartment . . . , and had a reasonable opportunity to avoid or resist the circumstances that took place in the bedroom at Rockport, but chose not to avail herself of those opportunities, then you must weigh her failure to take such reasonable opportunities on the credibility of her claim that she was kidnapped and raped."

*McDonald*, 110 Mass. 405, 406 (1872). Moreover, the judge was not required to comment upon particular facts of the case supposed to tend in favor of the defendants. *Commonwealth* v. *Miller*, 297 Mass. 285, 287 (1937). The judge was not bound to discuss every subsidiary fact and possible inference, but only to give generally accurate and complete instructions. *Commonwealth* v. *Monahan*, 349 Mass. 139, 171 (1965).

To the extent the defendants, at least as to the first requested instruction, appear to have been seeking to raise a defense of good faith mistake on the issue of consent, the defendants' requested instruction would have required the jury to "find beyond a reasonable doubt that the accused had *actual knowledge* of [the victim's] lack of consent" (emphasis added). The defendants, on appeal, argue that mistake of fact negating criminal intent is a defense to the crime of rape. The defense of mistake of fact, however, requires that the accused act in good faith and with reasonableness. See *Commonwealth* v. *Presby*, 14 Gray 65, 69 (1860); *Commonwealth* v. *Power*, 7 Met. 596, 602 (1844); R. Perkins, Criminal Law 939-940 (2d ed. 1969). Whether a reasonable good faith mistake of fact as to the fact of consent is a defense to the crime of rape has never, to our knowledge, been decided in this Commonwealth. We need not reach the issue whether a reasonable and honest mistake to the fact of consent would be a defense, for even if we assume it to be so, the defendants did not request a jury instruction based on a reasonable good faith mistake of fact. We are aware of no American court of last resort that recognizes mistake of fact, without consideration of its reasonableness, as a defense; nor do the defendants cite such authority. There was no error.

*Inconsistent verdicts.* The defendants' final argument is that the judge erred in denying their motions to set aside the verdicts or, in the alternative, to grant a new trial as a result of verdicts which were impossible at law. The defendants were each tried on three charges of aggravated rape and one charge of kidnapping, and the jury returned verdicts of not

guilty of kidnapping and so much of the indictments as charged aggravated rape. The defendants argue that the jury, having acquitted them of joint enterprise and kidnapping, could not find them guilty of three counts of the lesser included offense of simple rape. The defendants argue that the verdicts must not be permitted to stand because there was no joint venture theory for the lesser offense, or separate indictments for lesser offenses, nor were there any jury instructions on the theory of joint venture relative to the lesser offense.

The defendants rely on the line of cases that have reversed convictions because of jury verdicts that were impossible at law. See, e.g., *Commonwealth* v. *Carson*, 349 Mass. 430, 434-436 (1965) (convictions for larceny of stock and larceny of money proceeds from same stock, error); *Commonwealth* v. *Haskins*, 128 Mass. 60, 61 (1880) (convictions of larceny and receipt of same stolen goods, inconsistent in law).

These cases are inapposite. "[T]he rule is well established in criminal cases that mere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury." *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969). See *Commonwealth* v. *White*, 363 Mass. 682 (1973). See also *Harris* v. *Rivera*, 454 U.S. 339, 347-348 (1981) (verdict will not be set aside based on inconsistency). Although the defendants claim that they do not argue inconsistency of verdicts but rather legal impossibility of verdicts as the basis of the alleged error, the verdicts do not appear to us to be inconsistent. Nor do the verdicts appear to be legally impossible in the sense in which that term was used in *Carson, supra,* and *Haskins, supra.* The defendants cannot now complain because the jury did not specifically find the aggravating circumstances necessary for a conviction of aggravated rape. The fact of intercourse between each defendant and the victim was not contested. If the jury believed that each act of intercourse was against the will of the victim, the jury could find, as instructed, that each defendant

raped the victim, although they did not find rape by a joint enterprise.

Alternatively, it is possible that the jury were convinced that the defendants raped the victim in a joint enterprise, but were disposed through leniency to convict of the lesser included offense. Cf. *Commonwealth* v. *Dickerson*, 372 Mass. 783, 796-798 (1977); *id.* at 811-812 (Quirico, J., concurring). See *Dunn* v. *United States*, 284 U.S. 390, 393-394 (1932). We have stated that "the jury, within their power to appraise evidence selectively, might have accepted as credible enough evidence [to convict the defendants of rape], but might have declined to accept such further evidence as tended to prove [any aggravating circumstances]." *Commonwealth* v. *Dickerson, supra* at 796. Although the jury may have the power to act contrary to their legal obligation to return a verdict of guilty of the highest crime which had been proved beyond a reasonable doubt, see *Dickerson, supra* at 797, this does not mean that a verdict of guilt as to a lesser included offense may withstand a motion to set aside, if the record reveals that there is no evidence to sustain it.

The motion of each defendant to set aside the verdicts, or to grant a new trial, specified an additional ground, namely that the verdicts were "totally contrary to the weight of the evidence." Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979). A judge may consider such a motion where, as here, motions for required findings of not guilty had been filed under Mass. R. Crim. P. 25 (a). A verdict of guilty cannot stand when it is wholly contrary to the weight of the evidence. *Commonwealth* v. *Woods*, 382 Mass. 1, 7-8 (1980). This situation obtains as to two verdicts of guilty of unaggravated rape as to each defendant. Thus, to this extent, denial of these motions was error. There was no evidence of three separate rapes by each defendant which would warrant a conviction on all three indictments. Cf. *Commonwealth* v. *Therrien*, 383 Mass. 529, 538-539 (1981).

Although affirmance of all of the convictions would have no practical effect on the terms of incarceration, since the multiple sentences were imposed concurrently, we believe that justice requires that the convictions on two of the indictments as to each defendant be set aside.[9] Cf. *Commonwealth* v. *Jones*, 382 Mass. 387, 395-397 (1981). We affirm the defendant Sherry's conviction on so much of indictment number 033745 as charges unaggravated rape and vacate the convictions on the indictments numbered 033746 and 033911. In the defendant Hussain's case, we affirm his conviction on so much of indictment number 033737 as charges unaggravated rape and vacate his convictions on the indictments numbered 033738 and 033739. Similarly, we affirm the defendant Lefkowitz's conviction on so much of the indictment number 033741 as charges unaggravated rape and vacate the convictions on indictments numbered 033743 and 033744.[10]

*So ordered.*

---

[9] It was not legally impossible for the three defendants to be convicted on three charges of rape on another theory of guilt. The jury could have found that each defendant was an accessory before the fact to the other two acts of rape and the principal to the rape he perpetrated. See *Commonwealth* v. *Morrow*, 363 Mass. 601, 609 (1973). The jury, however, were not instructed on the law regarding the liability of principals and accessories and thus could not have based their verdict on this theory.

[10] We perceive no need in this case to remand for resentencing. See *Commonwealth* v. *Layne*, *ante* 291 (1982).