NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-1230                                             Appeals Court

COMMONWEALTH  vs.  JOSEPH HRAIZ.

No. 23-P-1230.

Suffolk.    January 6, 2025. – April 23, 2026.

Present:  Rubin, Henry, & Walsh, JJ.


Rape.  Consent.  Practice, Criminal, Instructions to Jury,
    Required finding.



Indictments found and returned in the Superior Court
Department on December 15, 2021.

The cases were tried before Kathleen M. McCarthy-Neyman, J.


Robert L. Sheketoff for the defendant.
David D. McGowan, Assistant District Attorney, for the
Commonwealth.


HENRY, J.  In this rape case involving college students who

had been friends for years, the defendant, Joseph Hraiz, argues

that the jury should have been instructed that constructive

force is not determined solely by the alleged victim's

subjective state of mind or feelings of fear, but also that her

fear must be objectively reasonable.  The defendant contends

2

that if the alleged victim's fear is irrational or objectively unreasonable, then there was no force, actual or constructive. The defendant's argument would add an element to the rape statute, G. L. c. 265, § 22 (b), which we decline to do. Commonwealth v. Fano, 400 Mass. 296, 305-306 (1987) ("It was appropriate for the judge to refuse to give the requested instruction because it was incorrect as a matter of law").  The defendant also contends that the trial judge erred in denying the defendant's motion for required findings of not guilty at the close of the Commonwealth's case and at the close of the defendant's case.  We affirm.

Background.  We summarize the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

The victim and the defendant met during their first year at Boston University when they were introduced by a mutual friend, Megan.  The victim, the defendant, and Megan were best friends until the events in question occurred during their senior year. The defendant and victim had never had a romantic relationship.

On April 24, 2021, the defendant, the victim, and Megan drank heavily in Megan's dorm room, and the victim smoked marijuana.  The plan was for the defendant to sleep over because the defendant lived with his parents off campus.  By 10:30 P.M., the victim had fallen asleep in Megan's bed.  She occasionally

woke up but fell right back asleep. Around midnight, Megan and the defendant decided to go to bed. Megan woke the victim, who said she was too tired to walk home. Megan told the victim that she could spend the night if she was willing to sleep on the floor. As the defendant and Megan were getting ready for bed, the victim fell back asleep on the blankets and pillow Megan had laid out on the floor beside the defendant's sleeping bag.

In the middle of the night, the victim awoke to her shirt pulled up around her neck and the defendant grabbing her breasts and pinching her nipples. It was painful. The victim testified that, as the defendant was grabbing her, she was "terrified" and "just froze." The defendant did not say anything. The victim did not consent to this or any touching that followed. The victim did not move or speak or even open her eyes. The defendant pushed his hand down into the victim's underwear and inserted two fingers into her vagina. Then, the defendant pulled down the victim's shorts and underwear and put his mouth on and his tongue into her vagina. Throughout, neither the victim nor the defendant said anything, and the victim remained still. The victim described the incident as going on for what "felt like forever" and said that she was "terrified" and "confused." The victim also testified that she "kept trying to tell [her]self that . . . [she] knew [the defendant] and that he wouldn't hurt [her]," but then realized that he was "literally

hurting [her]." The victim testified that her mouth was so dry from smoking marijuana that she could not clear her throat. She worried that if she yelled and Megan did not wake up, the defendant, who was physically stronger than she was, might panic.

After the defendant removed his mouth from the victim's vagina, he slapped her "ass," attempted to pull up her underwear, and went to the bathroom. The victim remained still after the sexual assault, fell asleep on the floor, and left the dorm room early the following morning. Later that morning, the victim called Megan crying and told her that the defendant was "grabbing [her] and that he'd fingered [her] and eaten [her] out and [she] didn't know why."

Later that evening, the defendant texted the victim that he "just wanted to say sorry for being super touchy during the night, because I'm not sure if that would have been something you would have wanted if you were fully sober." Over the course of the next few days, the defendant texted Megan in an effort to solicit her help with making amends with the victim, stating,

> "I can't explain how my mind and heart have been going crazy and are in pain the past few days because of how I sexually assaulted [the victim]. It was a huge mistake, and I know how serious this is. . . . . If there's anything I can do, please let me know. I need your guidance."

During the same period of time, the defendant also reached out to another mutual friend, Anna, for help, stating, "[I]s there anything I can do to do some sort of healing?  [I know] it is sexual assault, and I want to try to make things better for [the victim]."

The defendant testified in his own defense; his version of events was very different from the victim's.  He testified that he woke up in the night when the victim initiated sexual contact and that she was an active participant in what transpired.

Following a jury trial in Superior Court, the defendant was convicted of two counts of rape, G. L. c. 265, § 22 (b), and one count of indecent assault and battery, G. L. c. 265, § 13H.[1]

Discussion.  The rape statute "requires the Commonwealth to prove beyond a reasonable doubt the defendant (1) engaged in sexual intercourse[2] with the victim; (2) by force or threat of force; and (3) against the victim's will." Commonwealth v. Campbell, 494 Mass. 750, 754 (2024).  See G. L. c. 265, § 22 (b).  In this case, at trial, the fact of intercourse was undisputed.  On appeal, it also is undisputed that the victim did not consent to sexual intercourse.  The defendant's appeal

---

[1] The defendant does not challenge his conviction of indecent assault and battery.

[2] Sexual intercourse includes oral and digital intercourse. See Commonwealth v. Gallant, 373 Mass. 577, 584 (1977).

focuses on the jury instruction on constructive force and whether there was sufficient evidence of the element of force.[3]

"Proof of the force element of rape . . . may be established by physical force or constructive force." Commonwealth v. Armstrong, 73 Mass. App. Ct. 245, 254 (2008). See Commonwealth v. Caracciola, 409 Mass. 648, 652-653 (1991). As the Supreme Judicial Court has explained, "actual force is applied to the body, constructive force is by threatening words or gestures and operates on the mind" and may arise from "the circumstances or fear in which the victim is placed, the impact of those circumstances or fear on the victim's power to resist and the defendant's conduct" (citation omitted). Caracciola, supra at 651-652. A victim is not required to use any force to resist, see Commonwealth v. Lopez, 433 Mass. 722, 729 (2001), and the rape statute applies to a person "frozen by fear as well as victims who are otherwise incapacitated" (citation omitted).

---

[3] At sidebar, in response to the defendant's motion for required findings of not guilty, the Commonwealth agreed it was not arguing physical force and was proceeding on only an implied force theory. This complicated the case unnecessarily because "in situations where the victim is intoxicated, asleep, or otherwise incapable of providing consent, the only force that need be shown is the force necessary to accomplish the act." Commonwealth v. Wallace, 76 Mass. App. Ct. 411, 417 (2010), citing Commonwealth v. Blache, 450 Mass. 583, 591-592 (2008). See Campbell, 494 Mass. at 758. Cf. Commonwealth v. Feijoo, 419 Mass. 486, 493 (1995) (where rape occurs suddenly without warning, and thereby without victim "having had an opportunity to consent or object," there is rape by force).

Campbell, 494 Mass. at 759. "[N]o force beyond what is required for the act of penetration is necessary to accomplish the crime of rape where the victim is incapacitated." Id. at 758.

"To prove constructive force, the Commonwealth must show that the victim was afraid or submitted to the defendant because the defendant's conduct intimidated the victim." Commonwealth v. Testa, 102 Mass. App. Ct. 149, 152 (2023), citing Commonwealth v. Vasquez, 462 Mass. 827, 846 (2012). Relevant circumstances may include (1) any threatening words or conduct, which need not be of a "direct and immediate nature," Commonwealth v. Dumas, 83 Mass. App. Ct. 536, 539 (2013), cert. denied, 571 U.S. 1221 (2014); (2) "the historical and contextual relationship between the victim and the defendant," Testa, supra at 152; (3) any age or size difference between the defendant and victim, see Armstrong, 73 Mass. App. Ct. at 255; and (4) the "manner and means by which the rape [was] perpetrated," id. "The ultimate question is whether 'the defendant compelled the victim to submit'" (citation omitted). Testa, supra at 152.

With this legal context in mind, we turn to the defendant's arguments.

1. Jury instruction. The defendant contends that the judge erred in denying the defendant's request for a jury instruction that specified that the victim's "fear of force could not be simply subjective." He argued at trial that her

fear had to be "non-subjective," and that without this instruction, the jury were not required to determine whether the victim's fear was rational or reasonable.

Generally, a "judge is not required to grant a particular instruction so long as the charge, as a whole, adequately covers the issue" (citation omitted).  Commonwealth v. Cruz, 445 Mass. 589, 597 (2005).  "Because the defendant raised a timely objection to the judge's instruction to the jury, we review his claim for prejudicial error."  Commonwealth v. Allen, 474 Mass. 162, 168 (2016).[4]  A judge's refusal to give a requested jury instruction is reversible error only if the requested instruction is "(1) substantially correct, (2) was not substantially covered in the charge given to the jury, and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense" (emphasis omitted). Commonwealth v. DeGennaro, 84 Mass. App. Ct. 420, 431 (2013), quoting Commonwealth v. Adams, 34 Mass. App. Ct. 516, 519 (1993).

---

[4] The Commonwealth errs in relying on Commonwealth v. Robinson, 493 Mass. 775, 794 (2024), to argue that the standard of review is abuse of discretion.  The Supreme Judicial Court was merely summarizing the defendant's argument in that case -- not stating the governing standard of review.

The defendant relies on language in Commonwealth v. Sherry, 386 Mass. 682 (1982), in which the Supreme Judicial Court observed that jury instructions stating that "intercourse must be accomplished with force 'such [as] to overcome the woman's will; that it be sufficient to accomplish the man's purpose of having sexual intercourse against her will' or by threats of bodily harm, inferred or expressed, which engendered fear 'reasonable in the circumstances . . . so that it was reasonable for her not to resist'" correctly stated the elements of proof required for a rape conviction. Id. at 696.

The defendant's reliance is misplaced. The language in Sherry that the woman's fear had to be reasonable in the circumstances was dicta and therefore not precedential. See Commonwealth v. Lewis, 497 Mass. 90, 95 (2026) (language in judicial opinions only binding if accompanied by rationale); Kligler v. Attorney Gen., 491 Mass. 38, 71 (2022) ("Of course, the statement undoubtedly was dictum and therefore is not a controlling statement of law"); Old Colony Trust Co. v. Commissioner of Corps. & Taxation, 346 Mass. 667, 676 (1964) ("We do not feel bound to adhere to language which was unnecessary to . . . two earlier decisions, . . . and which passed upon an issue not really presented in either case"); Crocker v. Justices of the Superior Court, 208 Mass. 162, 173 (1911) (although dicta "are entitled to respect, they are not of

binding authority, and . . . not to be regarded as of controlling significance").  See also Black's Law Dictionary 570 (12th ed. 2024) ("obiter dictum" is "[a] judicial comment . . . that is unnecessary to the decision in the case and therefore not precedential").  But cf. Commonwealth v. Marquis, 495 Mass. 434, 455 n.15 (2025), cert. denied, U.S. Supreme Ct., No. 25-5280 (Jan. 12, 2026), quoting McRorey v. Garland, 99 F.4th 831, 837 (5th Cir. 2024) (on precedential force of footnote 9 in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 38 n.9 [2022], "[plaintiffs] characterize passages such as footnote 9 as dicta.  We [the 5th Circuit], however, are generally bound by Supreme Court dicta, especially when it is recent and detailed[, a]nd it doesn't get more recent or detailed than Bruen"); Marquis, supra, quoting Maryland Shall Issue, Inc. v. Moore, 116 F.4th 211, 221-222 (4th Cir. 2024) ("We are not free to ignore the Supreme Court's substantive dictum [in Bruen] on 'shall-issue' licensing laws . . . [and s]o, in accord with the Supreme Court's 'shall-issue' discussion, we hold that non-discretionary 'shall-issue' licensing laws are presumptively constitutional").

In Sherry, the issue before the court was whether the trial judge erred in declining to give two jury instructions "exactly as requested" by the three defendants.  Sherry, 386 Mass. at 696.  Neither of the requested instructions stated that the victim's fear had to be reasonable.  See id. at 696 & n.8.  In

analyzing the defendants' claim, the Supreme Judicial Court considered the instruction that the trial judge had actually given, and held that, viewed in its entirety, it adequately stated the elements of rape.  Id. at 696.  The court's recitation of that instruction did not resolve whether a victim's fear must be reasonable where that issue was neither analyzed nor raised.  In fact, this court held in a separate, later appeal by two of the defendants from Sherry that the instruction given by the trial judge may have exceeded the specifications of the statute.  Commonwealth v. Lefkowitz, 20 Mass. App. Ct. 513, 518-520 (1985).[5]

---

[5] In Felix F. v. Commonwealth, 471 Mass. 513 (2015), the Supreme Judicial Court cited Sherry for the proposition that "[f]or purposes of the rape statute . . . 'threats of bodily harm' may be expressed or implied, so long as it is reasonable in the circumstances for the complainant to be in fear and not resist."  Id. at 518.  This, too, was dicta.  The question before the court in Felix F. was the meaning of "threat" under the youthful offender statute, G. L. c. 119, § 54; the elements of rape were not at issue.  Id. at 514.  The court held "that the definition of 'threat' in the juvenile offender statute requires a communication or declaration, explicit or implicit, of an actual threat of physical injury by the juvenile."  Id. at 516.  In reaching that conclusion, the court surveyed cases interpreting "threat" in other statutory contexts, including rape, civil rights, and criminal threat statutes.  Id. at 518. It was within that survey that the court referenced Sherry to illustrate that a "threat" must stem from the defendant's conduct and its effect on a victim rather than a generalized potential for harm.  The court's holding rested on its interpretation of G. L. c. 119, § 54, and its conclusion that the juvenile's drug offense did not communicate a threat to an identifiable victim.  Id. at 517.  The reference to Sherry had no bearing on that holding and was not necessary to the court's resolution of the case.

What is paramount is that the rape statute, G. L. c. 265, § 22, does not require that the victim's fear be objectively reasonable.  As the Supreme Judicial Court explained in Vasquez, 462 Mass. at 846, "[c]onstructive force requires 'proof that the victim was afraid or that she submitted to the defendant because his conduct intimidated her'" (citation omitted).  The crime of rape "necessarily includes the rape of both victims frozen by fear, as well as victims who are otherwise incapacitated" (citation omitted).  Campbell, 494 Mass. at 759.  Accordingly, the statute protects all victims who submit out of fear or intimidation, even if a hypothetical reasonable person might not have been frightened under the same circumstances.  Cf. Commonwealth v. Lopez, 433 Mass. 722, 727-728 (2001) (rape statute does not require proof of defendant's knowledge of victim's lack of consent as element of offense); Commonwealth v. Cordeiro, 401 Mass. 843, 851 n.11 (1988) ("The Commonwealth is not required to prove either that the defendant intended the sexual intercourse be without consent or that he had actual knowledge of the victim's lack of consent"); Commonwealth v. Grant, 391 Mass. 645, 650 (1984) (express language of G. L. c. 265, § 22 (b), does not require specific intent that intercourse be without consent).

Indeed, we upheld a rape conviction in a case under a theory of constructive force where the child victim had

testified that "she was not threatened by the defendant and was not scared by him."[6] Armstrong, 73 Mass. App. Ct. at 256. We reasoned that the fact "the victim endured the rapes with resignation and with no will to resist the defendant's sexual exploitation [was] reflective of the very nature of the application of constructive force with respect to the crime of rape of a young person." Id. See Commonwealth v. Newcomb, 80 Mass. App. Ct. 519, 523-524 (2011) (history of repeated sexual abuse by parent against child established constructive force even after she reached adulthood and, as such, lack of consent).

Good reason exists not to require that the victim's fear be objectively reasonable. First, while some people "respond to sexual assault with active resistance, others 'freeze,' and 'become helpless from panic and numbing fear'" (citation omitted). People v. Iniguez, 7 Cal. 4th 847, 855 (1994). Of course, people who actively resist and people who freeze can both be afraid. As the Kansas Supreme Court recently explained in interpreting a similar rape statute, "[t]he concept of fear is inherently subjective because people experience fear in different ways; there is no one, uniform way to be afraid that can be objectively measured. After all, '[w]hat renders one person immobilized by fear may not frighten another at all.'"

---

[6] The victim was fourteen or younger at the time of the rapes. Armstrong, 73 Mass. App. Ct. at 247-248.

(citation omitted). State v. Ninh, 320 Kan. 477, 491 (2025).
Second, "[o]ne who takes advantage of a victim's unreasonable
fears of violence [to accomplish sexual intercourse without
consent] should not escape punishment" (citation omitted).
Salsman v. Commonwealth, 565 S.W.2d 638, 641 (Ky. App. 1978).[7]

Courts in other jurisdictions have taken this approach when
their respective rape statutes did not include an express
requirement that the victim's fear be reasonable. See, e.g.,
Clark v. State, 261 Ga. 311, 312 (1991) ("The question is not
. . . whether the victim's apprehension was reasonable. The
question is whether the state has proved, beyond a reasonable
doubt, that the acts of the accused were not freely consented to

_____

[7] The defendant did not seek an instruction on any
requirement that he knew or should have known of the victim's
fear, something some states appear to require. See, e.g., Md.
Code, Crim. Law § 3-301.1 (b) (5) ("submission as a result of
fear, . . . does not constitute consent if the individual
alleged to have performed the act in violation of this subtitle
knows or reasonably should know that the victim would submit as
a result of fear . . . ."); People v. Barnes, 42 Cal. 3d 284,
304 n. 20 (1986) ("even a complainant's unreasonable fear of
immediate and unlawful bodily injury may suffice to sustain a
[rape] conviction . . . if the accused knowingly takes advantage
of that fear in order to accomplish sexual intercourse"). As
the issue is not raised here, we express no opinion on it. Cf.
Lopez, 433 Mass. at 727-728 ("G. L. c. 265, § 22, does not
require proof of a defendant's knowledge of the victim's lack of
consent or intent to engage in nonconsensual intercourse as a
material element of the offense . . . . Any perception
[reasonable, honest, or otherwise] of the defendant as to the
victim's consent is consequently not relevant to a rape
prosecution").

by the alleged victim.  This is a question of fact . . . ."); Salsman, 565 S.W.2d at 641 ("In determining whether [the victim] submitted to [the defendant] because of an implied threat which placed [the victim] in fear of immediate death or physical injury, a subjective rather than objective standard must be applied"); Dinkens v. State, 92 Nev. 74, 79 (1976) ("So long as the evidence establishes that the victim was induced to submit to the sexual acts by actual fear, whether a 'reasonable' woman under such circumstances would have experienced the same fear is not a determination that courts and juries have to make").[8]

Here, the judge's instruction to the jury on constructive force tracked the model instruction on rape and was a correct statement of the law of this Commonwealth.  See Dumas, 83 Mass. App. Ct. at 540 ("There was no error in the judge's instruction to the jury on consent and constructive force, which tracked the model instruction on rape nearly verbatim and was a correct statement of the law of this Commonwealth. . . .  [T]he law regarding constructive force long has been established").  The relevant portion of the jury instruction on actual or constructive force, or as indicated by the judge, "implied force," stated:

---

[8] We note that this approach focuses the fact finder squarely on the conduct of the perpetrator rather than the perceived appropriateness of the victim's reaction.

"The second element the Commonwealth must prove is that [the defendant] used force or threat of force or bodily injury, actual or implied, to compel [the victim] to submit to sexual intercourse.  To prove that [the defendant] used actual force to penetrate [the victim], the Commonwealth must prove that [the defendant] used enough physical force to overcome [the victim's] ability to resist.  To prove that [the defendant] used the threat of force to penetrate [the victim], the Commonwealth must prove that [the defendant] used a threat of bodily harm to compel [the victim] to submit to penetration.

"To prove that [the defendant] used implied force to compel [the victim] to submit to intercourse, the Commonwealth must convince you that [the victim] submitted to the intercourse because she was afraid of or intimated [sic][9] by [the defendant].  Implied force is the use of threatening words, gestures, or actions or other circumstances to overcome another's will.  Implied force operates to instill fear and to make someone have intercourse without that person's consent.

"To establish that [the defendant] used implied force, the Commonwealth must prove that [the victim] submitted to the sexual intercourse because she was afraid or intimidated by [the defendant's] words, gestures, or actions.  You may consider all the circumstances, including each person[']s age and size, and the whole relationship between them in deciding whether [the defendant] used implied force.  An examination of the circumstances or fear in which [the victim] is placed, the impact of those circumstances or fear on her power to resist, and [the defendant's] conduct are all relevant to the determination of whether the conduct complained of by [the victim] was accomplished by force and against her will."

This implied force instruction allowed the jury to consider the entire circumstances of the alleged assault.  That necessarily included whether the actions of the defendant

---

[9] We take this to mean "intimidated."  Three sentences later, the judge used "afraid or intimidated."

induced fear in the victim and placed the victim in such fear that her will was overcome. Here, the defendant was free to argue all of the circumstances and challenge the credibility of the victim, and he did. He also argued that there was no reasonable basis for her fear. Whether a "reasonable" woman would have experienced the same fear is not a determination the jury has to make, and the defendant did not succeed with this argument. We discern no error.

2. <u>Motions for required findings of not guilty</u>. The defendant argues that the judge erred in denying his motions for required findings of not guilty made at the close of the Commonwealth's case and at the close of all the evidence. Both motions were properly denied.

When reviewing the denial of a motion for required finding of not guilty at the close of the Commonwealth's case, we "consider the evidence in the light most favorable to the Commonwealth to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Commonwealth</u> v. <u>Cordle</u>, 412 Mass. 172, 175 (1992). See <u>Latimore</u>, 378 Mass. at 676-677.

We conclude that the evidence, taken in the light most favorable to the Commonwealth, was sufficient for the jury to have found proof of force beyond a reasonable doubt. The victim suddenly awoke to the defendant pressed up against her back and

painfully pinching her nipples. She testified that she felt "terrified," "confused," and "just froze."[10] While the victim lay immobile, not speaking or reciprocating, the defendant removed her shorts and underwear and painfully penetrated the victim's vagina with two fingers and then with his tongue. After a period of time, the defendant removed his tongue from her vagina, slapped her buttocks, partially pulled her underwear and shorts back up, kissed her on the neck and cheek, and left the room. The victim also testified that the defendant was physically stronger than she was and regularly discussed going to the gym and working out.

Given this evidence and the jury instructions, the jury could have found that the defendant used constructive force. The jury could have found that the victim did not consent and submitted to the defendant's painful conduct because his acts instilled fear in her that caused her to freeze and thereby compelled her to submit. See Caracciola, 409 Mass. at 655 n.10 (constructive force established by evidence "that the intercourse resulted from the coercive atmosphere and fear of

---

[10] During trial, the Commonwealth conceded that it did not pursue a theory of incapacitation and inability to form consent caused by the victim's ingestion of marijuana or alcohol. However, we are still able to consider the substances she consumed as it impacted the victim's ability to resist in the context of constructive force. Sherry, 386 Mass. at 688.

the complainant as a result of the words and conduct of the defendant").  The judge did not err in denying the motion for required findings of not guilty at the close of the Commonwealth's case.

When the defendant renewed his motion for required findings of not guilty after presenting his case, which consisted solely of his own testimony of the events of the night, he failed to deteriorate the Commonwealth's case.  Commonwealth v. Nhut Huynh, 452 Mass. 481, 485 (2008) ("Deterioration does not occur simply because the defendant presented evidence that contradicted the Commonwealth's case").  The judge did not err in denying the motion for required findings of not guilty at the close of the defendant's case.

Judgments affirmed.