## Commonwealth *vs.* Juan Diaz.

Hampden. November 10, 2006. - January 31, 2007.

Present: Marshall, C.J., Greaney, Spina, Sosman, & Cordy, JJ.

*Homicide. Practice, Criminal,* Capital case, Assistance of counsel, Severance, View, Recalling witness, Objection, Transcript of evidence. *Constitutional Law,* Assistance of counsel.

At the trial of an indictment charging murder in the first degree, the defendant's counsel was not ineffective in not moving to sever the defendant's trial from that of a codefendant, where there was no basis for such a motion and it did not appear likely that the judge would exercise his discretion to grant such a motion [288-291]; similarly, counsel's decisions to permit the jury to view certain memorials [291] and to recall a certain witness as a defense witness [292-293] were not manifestly unreasonable, and there was no basis for concluding that any alleged ethical impropriety on the part of counsel would have had any impact on the jury's decision [291-292]; finally, the defendant failed to demonstrate that counsel was ineffective in objecting to certain testimony, in failing to provide a translated transcript of portions of a tape-recorded conversation, or in confusing names of the codefendants and several witnesses [293-294].

This court found no grounds warranting relief under G. L. c. 278, § 33E, for a defendant convicted of murder in the first degree, where the defendant's arguments asked this court to credit the testimony of some witnesses and discount certain testimony of others, which is a role properly left to the jury. [294]

Indictment found and returned in the Superior Court Department on November 12, 2003.

The case was tried before *John A. Agostini,* J.

*Greg T. Schubert* for the defendant.

*Marcia B. Julian,* Assistant District Attorney, for the Commonwealth.

Sosman, J. The defendant, Juan Diaz, was convicted of murder in the first degree (on theories of deliberate premeditation and extreme atrocity or cruelty) in connection with the shooting

death of the victim, Joel Martinez.[1] On appeal, the defendant claims that he was denied effective assistance of counsel. He also asks this court to exercise its power under G. L. c. 278, § 33E, to reverse the conviction. For the following reasons, we affirm the conviction of murder in the first degree, and decline to grant relief pursuant to G. L. c. 278, § 33E.

1. *Background.* We summarize the facts the jury could have found, reserving other facts for discussion in conjunction with specific issues raised. On the afternoon of July 3, 2003, the victim waved $1,000 at the defendant and Nelson Aponte, the defendant's friend, as they passed each other walking down Orchard Street in Springfield. Later that night, the victim was sitting in front of 39 Orchard Street, the home of two of his good friends, Hector and Emilio Deida. The victim had recently purchased a new vehicle, and Emilio was washing it for him in the driveway next to the house. Sometime after midnight, the defendant called over from the parking lot behind the house and told the victim to join him. The victim left the Deidas' house and met up with the defendant in the parking lot between Orchard and Washburn Streets. Once there, the defendant pointed a gun at the victim and told him to take out his wallet and put it on the ground. A neighborhood resident, Roel Burgos, was passing through the parking lot just as the victim was ordered to put his wallet on the ground. The defendant told Burgos to go away. Burgos complied.

After Burgos left the parking lot, Nelson Aponte, another neighborhood resident, passed through the same lot. The defendant pointed a gun at Aponte and ordered him to get the victim's car and bring it to the lot. The defendant tossed the victim's keys to Aponte. Aponte walked back to the Deidas' house and retrieved the car. He drove it around the block and joined the defendant and the victim, who had moved to a second parking lot across the street, between Washburn and Lowell Streets. Aponte returned the keys to the victim and left the scene. Moments later two shots were fired, hitting the victim

---

[1] On related indictments charging armed robbery and assault by means of a dangerous weapon, the defendant was found not guilty.

in his lungs and heart. He died a short time later.[2]

Burgos ran back to the parking lot after the shots were fired and remained there while the police were summoned. The defendant came up to him and instructed him to tell the police that "some black people came over here . . . shooting." Two days later, the defendant stood on Orchard Street and yelled out, "any of the witnesses who rat on me I'll shoot." On another occasion, the defendant told Burgos that "you just make sure to keep your mouth shut." Later, when the defendant saw Burgos at the court house, he told Burgos, "You messed up, you wasn't supposed to say nothing."

2. *Ineffective assistance of counsel.* The defendant claims that his trial counsel was ineffective in various respects. "In evaluating a claim of ineffective assistance of counsel in a case of murder in the first degree, we begin by determining whether there was a serious failure by trial counsel." *Commonwealth* v. *Harbin*, 435 Mass. 654, 656 (2002). Serious failure of counsel means "serious incompetency, inefficiency, or inattention of counsel — behavior falling measurably below that which might be expected from an ordinary, fallible lawyer." *Commonwealth* v. *Shuman*, 445 Mass. 268, 276 (2005), quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). A tactical decision by trial counsel is considered ineffective assistance only if such a decision was manifestly unreasonable when made. *Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1998).

We then must determine, in accordance with G. L. c. 278,

[2]There was evidence that the codefendant, Jose Pena, was also present with the defendant and the victim as events unfolded in the two parking lots. Aponte testified that Pena was with the defendant and the victim when he (Aponte) was ordered to retrieve the victim's vehicle. Burgos also testified that he returned to the area after Aponte brought the car to the second parking lot, and saw Pena holding a gun (the same gun the defendant previously held) and standing with the victim near the trunk of the victim's car, with Aponte standing a short distance away. Pena told Burgos to "back off" and that it was "not [his] business." He did not see the defendant at that point, but he did see that someone was sitting in the car. Burgos heard Pena ordering the victim to get in the trunk, but the victim refused, saying that "if I get in there you all going to shoot me." Pena insisted that Burgos leave; Burgos spoke briefly to Aponte, and then left the scene. The jury found Pena not guilty of both armed robbery and murder in the first degree.

§ 33E, whether counsel's failure gives rise to a substantial likelihood of a miscarriage of justice, i.e., whether it was "likely to have influenced the jury's conclusion." *Commonwealth* v. *Mitchell*, 428 Mass. 852, 854 (1999), quoting *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). A catalogue of "subjective critiques of defense counsel's decisions, absent a showing that errors likely affected the jury's conclusions, is insufficient to support an ineffective assistance claim." *Commonwealth* v. *Scott*, 428 Mass. 362, 369 (1998).

The defendant raises his claim of ineffective assistance on direct appeal, based solely on the trial record. Such an ineffective assistance claim is in its "weakest form" because "it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight." *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 n.5 (2002). As such, claims of ineffective assistance should normally be raised through a motion for a new trial, where an appropriate factual record can be developed. *Commonwealth* v. *Zinser*, 446 Mass. 807, 810-811 (2006). In most instances, the record on direct appeal is inadequate to consider the claim; therefore, both this court and the Appeals Court normally do not entertain ineffective assistance claims on direct appeal. *Id.*, and cases cited. "The occasions when a court can resolve an ineffective assistance claim on direct appeal are exceptional," *id.* at 809 n.2, and that "narrow" exception occurs only where "the factual basis of the [ineffective assistance] claim appears indisputably on the trial record," *id.* at 811, quoting *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994). Here, based on the trial record, we conclude that there was nothing manifestly unreasonable about counsel's tactical decisions and that none of the claimed failures by counsel was likely to influence the jury's decision.

a. *Motion for severance.* The defendant contends that his counsel was ineffective because he made no motion to sever the defendant's trial from that of his codefendant, Pena, until near the end of the trial. An ineffective assistance claim based on the failure to bring a motion requires the defendant to show that the motion would likely have been granted. *Commonwealth* v. *Bly*, 444 Mass. 640, 654 (2005). *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983).

Ordinarily, decisions pertaining to severance and joinder are left to the sound discretion of the trial judge. *Commonwealth* v. *McAfee*, 430 Mass. 483, 485 (1999). *Commonwealth* v. *Vieira*, 401 Mass. 828, 836 (1988). Separate trials for codefendants are required only in cases where the defenses are mutually antagonistic or irreconcilable. *Commonwealth* v. *Moran*, 387 Mass. 644, 659 (1982). Severance is not required when the trial strategies of the codefendants are merely inconsistent. *Commonwealth* v. *Cunningham*, 405 Mass. 646, 654 (1989). Here, neither codefendant directly implicated the other. Not only were their defenses not mutually antagonistic or irreconcilable, but they shared a common strategy. Both defendants relied on impeaching the government's witnesses and raising doubt about whether other persons seen in the area (i.e., Burgos or Aponte) might have been the perpetrators. See *Commonwealth* v. *McAfee, supra* at 486 (severance not required in part because both defendants shared common approach of "vigorously attack[ing] the credibility" of eyewitness); *Commonwealth* v. *Mahoney*, 406 Mass. 843, 849 (1990) (severance not required in part because two codefendants shared "common approach" of blaming third person for crime).

Nor does it appear that the judge was likely to use his discretion to sever the trials on counsel's motion. Indeed, codefendant Pena moved to sever at the start of trial (and again at various points during the trial). Severance was denied,[3] making clear that the judge would not have severed the trial if the same motion had been filed by the defendant. In these circumstances, it was not "manifestly unreasonable" for trial counsel to fail to bring a motion to sever the trials when the two defenses were not mutually antagonistic and when such a motion was not

---

[3]Pena's counsel moved to sever at the start of the trial claiming "some inconsistent defense issue." He argued that the defendant's proposed introduction of Aponte's gang involvement would prejudice Pena, and he disagreed with the defendant's counsel over whether the jury should take a view of the murder site. Pena did not argue that the defenses were mutually antagonistic, or that the defendant directly implicated Pena. Pena claimed only that the defendant's trial strategy might "prejudice" Pena's trial. The judge understandably saw no danger of the two defenses becoming truly antagonistic, and he acted within his discretion when he denied Pena's motion.

likely to have been granted.[4]

b. *The view.* The defendant contends that his counsel was ineffective because he failed to prevent and indeed encouraged the jury to view certain memorials to the victim erected at the murder scene. The defendant argues that Pena's counsel's objection to the view as emotionally prejudicial is evidence that it was manifestly unreasonable for the defendant's trial counsel to have encouraged it. We disagree. The record indicates that defense counsel had hoped to use the presence of certain names on the memorials to the victim to demonstrate the bias of two potential Commonwealth witnesses (Hector and Emilio Deida), and he therefore asked the jurors to take note of those two names on the memorials. This strategic decision was not manifestly unreasonable, as it did highlight the close relationship between the Deida brothers and the victim. Furthermore, the judge permitted the view over Pena's objection; any objection the defendant's counsel might have raised would likely have been unsuccessful.[5]

c. *Instruction to defense investigator.* The Commonwealth

---

[4]The defendant's trial counsel later moved to sever his client's trial from Pena's when he realized that the testimony of one of Pena's witnesses, Hector Deida, would implicate the defendant. It was Hector who had seen the victim "flash" $1,000 in front of both the defendant and Aponte earlier in the day on July 3. Hector also heard the defendant threaten to shoot any neighborhood witness who spoke to the police. The judge denied the defendant's motion to sever. By that time in the trial it had become clear that the trial strategies of the two codefendants were at least partially inconsistent, but they were not mutually antagonistic or irreconcilable. The two codefendants did not directly implicate each other, nor were they in a position where "[t]he only realistic escape for either defendant was to blame the other." *Commonwealth* v. *Moran*, 387 Mass. 644, 659 (1982). They still shared the common strategy of impeaching government witnesses and suggesting other culprits. Effectively, Pena's counsel argued that the case against Pena was even weaker than the evidence against the defendant. That position is not antagonistic or irreconcilable with the defendant's defense. See *Commonwealth* v. *McAfee*, 430 Mass. 483, 486 (1999); *Commonwealth* v. *Mahoney*, 406 Mass. 843, 849 (1990). Severance was not required in these circumstances, and the judge did not abuse his discretion by denying the defendant's motion.

[5]The judge took the precaution of questioning potential jurors whether the presence of memorials to the victim might affect their ability to be impartial. Two potential jurors were excused because of equivocal answers to that query. The judge also gave a forceful instruction to the jury on the subject of the memorials, further reducing the possibility that the memorials might sway their verdict.

considered calling the defense investigator as a witness, and sought to obtain the investigator's notes, as a potential means of rehabilitating a witness by offering a prior consistent statement made to the investigator. Trial counsel attempted to prevent the Commonwealth from gaining access to his investigator's notes, and argued that he should be able to prevent his investigator from testifying for the Commonwealth.[6]

The defendant contends that trial counsel was ineffective because he instructed his investigator not to speak to or testify for the Commonwealth.[7] He argues that this instruction was an ethical violation that deprived the defendant of the effective assistance of counsel. We need not delve into whether anything trial counsel may have said to the investigator was improper, as there is no basis for concluding that such impropriety (if any) would have had any impact on the jury's decision. The judge did not take any action on trial counsel's ostensible ethical violation, and the jury heard nothing about it.

d. *Emilio Deida's testimony.* The defendant argues that trial counsel was ineffective in recalling Emilio Deida as a defense witness. Based on the investigator's interview of Emilio, trial counsel expected Emilio to testify that he saw the defendant and Aponte pull up in a car in front of his house within seconds of the shots being fired. From this anticipated testimony, counsel planned to argue that the defendant could not have shot the victim in the parking lot and driven to Emilio's house within a few seconds — the investigator had timed the route and concluded that it would have taken at least forty-three seconds to drive that distance.[8] On the stand, however, Emilio testified that he did not see the defendant and Aponte, and thus did not provide the requisite time frame on which this defense argu-

---

[6]Ultimately, the Commonwealth did not call the investigator as a witness. The investigator testified when called as a defense witness.

[7]The investigator testified that he had decided on his own, for reasons of "confidentiality," that he should not speak to the prosecutor.

[8]When Emilio did not testify as expected, the defendant attempted to get a time estimate from Hector Deida. Although Hector testified to a longer interval between the shots and the arrival of the defendant's vehicle, that evidence still allowed defense counsel to argue in closing that the defendant could not have been present in the parking lot at the time the shots were fired.

ment hinged. Trial counsel expected Emilio's testimony to unfold quite differently, and that expectation was reasonably based on the investigator's report.[9] It was not manifestly unreasonable for trial counsel to call Emilio as a witness when counsel reasonably expected testimony that would have helped establish that the defendant could not have murdered the victim.[10]

e. *Miscellaneous.* The defendant contends that defense counsel was ineffective in objecting to testimony of Michael Arroyo on hearsay grounds. The judge conducted a voir dire in response to additional objections that the testimony would be more prejudicial than probative. After the voir dire, the judge allowed the Commonwealth to admit Arroyo's testimony as a prior consistent statement.[11] The defendant does not suggest some other means by which defense counsel might have convinced the judge to exclude this damaging testimony, and the mere fact that he interposed objections on grounds that were unsuccessful does not demonstrate ineffective assistance.

The defendant argues that defense counsel was ineffective in failing to provide a translated transcript of portions of a tape-recorded conversation between the defendant and Burgos. The prosecution introduced into evidence and played for the jury portions of the tape. While much of the conversation was in English, part of it was in Spanish. The defendant hypothesizes that Spanish-speaking jurors would have understood that additional portion of the conversation, but points to nothing in the Spanish portion of the conversation that would have either helped or hurt the defense. The defendant claims that, during the Spanish portion, Burgos stated that he felt like killing someone. The defendant then speculates that the Spanish-

---

[9]The investigator testified as to Emilio's prior inconsistent statement concerning the defendant and Aponte arriving on Orchard Street a few seconds after the shots.

[10]When called by the defense, Emilio did not give any incriminating testimony beyond what had already been elicited by the prosecutor in the Commonwealth's case-in-chief.

[11]Burgos had been extensively impeached. The Commonwealth sought to rehabilitate him by offering Arroyo's testimony that Burgos had met up with him just after Burgos had been in the parking lot, at which time Burgos reported seeing the defendant with a gun to the victim's head while the victim was on his knees.

speaking jurors might have understood the remark but mistakenly attributed it to the defendant, instead of to Burgos. Such speculation does not demonstrate that a transcript or translation would have affected the jury's decision.

The defendant finally argues that trial counsel was ineffective because on several occasions he confused the names of the codefendants and several of the witnesses. On each occasion, however, the record shows that he was able to correct any misunderstanding, and there was no indication that defense counsel was genuinely confused about the facts of the case. An occasional slip of the tongue on a name does not indicate ineffective assistance. Moreover, most of these mistakes occurred during sidebar conferences, not in front of the jury. The few that occurred in front of the jury were minor, and no more frequent than comparable examples of name confusion on the part of the prosecutor and Pena's counsel. As such, they could not have contributed to the jury's decision.

3. *G. L. c. 278, § 33E.* The defendant raises several points in seeking relief under G. L. c. 278, § 33E. First, he notes that Burgos testified that just before the shooting he saw Pena, not the defendant, holding the gun to the victim, and did not see the defendant at the scene when he encountered them in the second parking lot. The defendant also points out that several of the Commonwealth's witnesses had criminal records and had motives to falsely implicate the defendant. Finally, the defendant argues that he could not have been at the scene of the shooting and then arrive in front of the Deidas' house at the time Emilio once claimed to have seen him. These arguments ask us to credit the testimony of some witnesses and discount certain testimony of others. This role was properly left to the jury. We have reviewed the entire record and have found no grounds warranting relief under G. L. c. 278, § 33E.

*Judgment affirmed.*