TESTA, COMMONWEALTH vs., 102 Mass. App. Ct. 149

 
 COMMONWEALTH vs. ANTHONY J. TESTA.

102 Mass. App. Ct. 149
 September 8, 2022 - January 13, 2023

Court Below: Superior Court, Plymouth County
Present: Rubin, Henry, & Walsh, JJ.

 

No. 21-P-244.

Rape. Indecent Assault and Battery. Jury and Jurors. Practice, Criminal, Motion for a required finding, Jury and jurors, Voir dire, Assistance of counsel.

At the trial of indictments charging the defendant with rape and indecent assault and battery, the evidence was sufficient for the jury to conclude that the defendant committed rape, where he forced the victim to have sex with him against her will by a combination of constructive force, in the form of psychological intimidation and physical domination, and physical force. [151-153]

At a rape trial, the judge did not abuse his discretion in concluding that the jury remained impartial, where the judge conducted a limited voir dire to inquire into the effect on each juror of a statement made by one of the jurors (i.e., that she had been kissed by her father) and assured himself that the jurors could judge the case fairly; and where the defendant failed to clearly show that the juror who made the statement was inherently biased based on her experience. [153-154]

At a rape trial, defense counsel's tactical decision not to object to the judge's failure to determine which juror had made a statement that she had been kissed by her father or to move for a mistrial was not manifestly unreasonable, and in any event, even if counsel's decision had amounted to ineffective assistance, the defendant demonstrated no prejudice arising therefrom. [154-156] 

Indictments found and returned in the Superior Court Department on October 20, 2017. 

 The cases were tried before Cornelius J. Moriarty, II, J. 

 Ruth O'Meara-Costello for the defendant.

 Johanna S. Black, Assistant District Attorney, for the Commonwealth.

 WALSH, J. A Superior Court jury convicted the defendant of three counts of rape and two counts of indecent assault and battery. The defendant appeals, claiming that the Commonwealth failed to show sufficient evidence of force as to the three counts of rape and that the judge erred in denying the defendant's motion for 

 Page 150 

required findings of not guilty. The defendant also argues that the jury were not impartial and that his counsel provided ineffective assistance. For the reasons that follow, we affirm the judgments. 

 Background. We summarize the relevant trial evidence as follows, applying the familiar Latimore standard. See Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979). "[The] question is whether, after viewing the evidence in the light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Colas, 486 Mass. 831, 836 (2021), quoting Latimore, supra at 677. 

 The defendant was married to the victim's mother and lived with the victim, the victim's mother, and the victim's younger brother. On the morning of August 30, 2017, the day before the victim was to leave for college, the victim, a nineteen year old high school graduate, went onto the back porch of the house. The victim spoke to the defendant about her upcoming departure for college, and he spoke to her about her inexperience regarding dating, telling her that "boys at college are different" and "you have to watch out." The victim had known the defendant since age seven and viewed him as a "father figure." Although they had spoken often about college during the past few months, they had never spoken about dating. 

 After talking for about an hour, the defendant told the victim that he had to go inside to cut his hair and the victim's brother's hair. The two went upstairs together and continued to talk about college and dating. At that time, the victim's mother was at work and the victim's brother was downstairs. The defendant then cut his own hair as the victim took a telephone call from her mother. The defendant told the victim he was going to take a shower, so the victim walked to her bedroom. While the victim was in the bedroom, the victim's brother came upstairs and asked the victim when he was going to get his haircut. She told her brother that he would get his hair cut later, so her brother went back downstairs. 

 After showering, the defendant walked toward the victim's bedroom in a towel and stood in the hallway in front of the open bedroom door. The victim, in her pajamas, was lying on her bed and playing on her cell phone. The defendant said to the victim without explanation that he would "get in trouble for doing this" and then stepped into the victim's bedroom. The defendant told the victim she was beautiful and complimented her breasts. When the victim, who was wearing a shirt, showed signs of being 

 Page 151 

embarrassed and covered herself further, the defendant said, "I [have] already seen them." 

 The defendant approached the victim's bed, sat on the bed, and asked the victim what she would do if he dropped his towel. The bedroom door remained open. The victim responded, "[N]othing." The defendant then removed his towel and asked the victim if she had ever touched a penis. The victim said "[N]o." The defendant, while saying that the victim needed more experience because she did not have any, used his hand to move the victim's hand to his erect penis. The victim testified that, in a state of shock, she "froze" and was unable to move. The defendant then grabbed the back of the victim's neck, pushed her head toward his face, and started kissing the victim. The victim, still in shock, did not respond to the defendant's actions but wanted to run away. The defendant then got on top of the victim and continued to kiss her. 

 The defendant then got off the victim, removed her clothes, lifted her legs onto his shoulders, and asked her whether she had "done anything oral." The victim said, "[N]o, I've done nothing." The defendant put his mouth on her vagina and inserted his tongue. The victim did not move or resist, and she lay on her bed, looking at the ceiling and wishing this was not happening. The defendant then repeatedly inserted his finger into her vagina. The victim testified, "I felt like I couldn't move." The defendant then repositioned himself and inserted his penis into her vagina. The victim told the defendant twice that the defendant was hurting her. She put her hands on his hips and tried to push him off for about ten minutes. Eventually, the victim stopped resisting because she "thought it was no use." The defendant told her to breathe and said that she would feel better soon. The penetration lasted twenty minutes, after which the defendant got off the victim. The victim grabbed her towel and ran to the bathroom, cried, and showered. As she was leaving the bedroom, the defendant "smack[ed]" the victim's butt. 

 Discussion. 1. Sufficiency of the evidence. The defendant first argues that there was insufficient evidence to support his convictions of rape and that the trial judge therefore erred in denying his motion for required findings of not guilty. An individual commits rape when the individual "has sexual intercourse or unnatural sexual intercourse with a person and compels such person to submit by force and against his will." G. L. c. 265, § 22 (b). A victim is not required to use any force to resist. See Commonwealth v. Lopez, 433 Mass. 722, 729 (2001). The defendant argues 

 Page 152 

that the Commonwealth provided insufficient evidence of force and, therefore, that the judge erred when denying the defendant's motion for required findings of not guilty. We affirm the denial of a motion for a required finding of not guilty if the Commonwealth's evidence, "together with reasonable inferences therefrom, when viewed in [the] light most favorable to the Commonwealth, [is] sufficient to persuade a rational jury" of the defendant's guilt beyond a reasonable doubt. Commonwealth v. Copeland, 481 Mass. 255, 259 (2019), quoting Commonwealth v. Whitaker, 460 Mass. 409, 416 (2011).

 The element of force can be met with evidence of actual physical force, constructive force, or a threat of force. Lopez, 433 Mass. at 728-729. The ultimate question is whether "the defendant compelled the victim to submit." Commonwealth v. Oquendo, 83 Mass. App. Ct. 190, 194 (2013). See Commonwealth v. Feijoo, 419 Mass. 486, 492 (1995), quoting Commonwealth v. Caracciola, 409 Mass. 648, 653 (1991) ("[T]he force needed for rape may, depending on the circumstances, be constructive force, as well as physical force, violence, or the threat of bodily harm" [emphasis added]). To prove constructive force, the Commonwealth must show that the victim was afraid or submitted to the defendant because the defendant's conduct intimidated the victim. Commonwealth v. Vasquez, 462 Mass. 827, 846 (2012). In examining whether the victim was compelled to submit by constructive force, we may consider the historical and contextual relationship between the victim and the defendant, as well as the manner and means by which the rape is perpetrated. Commonwealth v. Armstrong, 73 Mass. App. Ct. 245, 255 (2008).

 In this case, the jury could readily have found beyond a reasonable doubt that the defendant forced the victim to have sex with him against her will by a combination of constructive force, specifically in the form of psychological intimidation and physical domination, and physical force. The victim was the defendant's nineteen year old, sexually inexperienced stepdaughter with whom he had had a parental relationship since she was seven. The defendant forced the victim's hand onto his erect penis, leaving her in shock and unresponsive. He grabbed her neck, pulled her head toward his face, and forcibly kissed her, to which the victim did not reciprocally respond. He proceeded in his application of physical force by getting on top of her with "tons of weight," continuing to kiss her for five minutes while she just lay there with her hands draped on the bed at the sides of her body. He then 

 Page 153 

took her clothes off, lifted her legs, and put them on his shoulders while she continued to lie there unresponsive, and he began penetrating her vagina first with his tongue, then his finger, and then his penis. He continued to have vaginal intercourse with her as she told him he was hurting her and while she attempted for ten minutes to push him off. This evidence is more than sufficient to support the verdict. 

 2. Impartiality of jury. The defendant next argues that he is entitled to a new trial because there is evidence that the jury were not impartial. 

 We summarize the relevant procedural history. During voir dire, potential jurors were asked questions regarding their ability to be impartial, including whether they or any member of their family had been accused of or a victim of sexual assault. During jury deliberations, the foreperson brought a note to the judge's attention that said one juror had told the panel she had been kissed by her father and that another juror wanted to know whether it was appropriate for the individual to remain a juror. The judge conferred with counsel and conducted a limited voir dire to inquire into the effect the statement had on each juror. The defendant's counsel did not object to this procedure. The voir dire elicited no further information about the meaning or context of the juror's statement, nor did it reveal which juror had made the statement. The judge noted, however, that all of the jurors assured him they could judge the case fairly and impartially, and he concluded that the jury remained impartial. The defendant's counsel did not object to the judge's conclusion.

 The defendant now argues on appeal that the judge committed reversible error because the unknown juror's statement to the panel that she had been kissed by her father was evidence that she was biased. The defendant also implies that the juror in question must have lied during the initial voir dire regarding whether she or any member of her family had been accused of or a victim of sexual assault.

 This court will not disturb the judge's conclusion that the jury remained unbiased absent "a clear showing of an abuse of discretion or that the finding was clearly erroneous" (citation omitted). Commonwealth v. Colon, 482 Mass. 162, 168 (2019). Here, the note arguably implies that at least one member of the jury was concerned that another member should not be a deliberating juror because of her statement that she had been kissed by her father. It also raises concerns that the juror who made the statement, 

 Page 154 

potentially due to her past experience, was biased and did not answer the questions asked during empanelment truthfully. 

 Here, the judge promptly conducted an individual voir dire to inquire into the statement made. Taking great care not to inquire into each juror's individual or the jury's collective thought processes, cf. Commonwealth v. Blanchard, 476 Mass. 1026, 1027-1028 (2017), the judge asked every juror whether the statement impacted the juror's ability to judge the case fairly and impartially. Only after hearing each juror's response and asking questions to clarify answers did the trial judge conclude that each of the jurors remained impartial. Where, as here, "a judge conducts individual voir dire of each juror, excuses all influenced jurors, and determines that the remaining jurors are impartial, a defendant's right to an impartial jury has not been violated." Colon, 482 Mass. at 168. 

 Additionally, we are unconvinced that the statement clearly shows that a juror was biased or lied during voir dire. The juror's statement that she was kissed by her father does not inherently conflict with any of the jurors' answers when asked whether they or any member of their family had been accused of or a victim of sexual assault. There is simply not enough evidence to infer, as the defendant would like, that the juror must have been, or must have understood herself to have been, a sexual assault victim. Additionally, the defendant has failed to make a clear showing that an abuse of discretion occurred because the defendant did not clearly show that the juror who made the statement was inherently biased based on her experience. See Commonwealth v. Cassino, 474 Mass. 85, 97-98 (2016) (no abuse of discretion where judge found two jurors credible after voir dire even when jurors gave seemingly conflicting answers because jurors' statements were "not necessarily contradictory"). Based on our review of the record, and for the reasons discussed above, we conclude that the defendant has failed to show that the jury were not impartial; he is not entitled to a new trial on this ground. 

 3. Ineffective assistance of counsel. Lastly, the defendant argues that his counsel provided ineffective assistance and he is thus entitled to a new trial. Although trial counsel did not object when the trial judge concluded that the jury remained unbiased and did not move for a mistrial, there was significant colloquy between trial counsel and the judge with regard to both the voir dire procedure and the judge's conclusion after completing the inquiry that each of the jurors remained unbiased. After some 

 Page 155 

discussion, trial counsel specifically stated that he did not object to the judge's plan to voir dire the jury. During further colloquy after the voir dire and after the judge indicated that there was no basis for a mistrial or to discharge anyone from the jury, trial counsel responded: "I wish I could say I disagree with the Court but based upon their answers, I don't know that I'd have a good faith [basis] to do so." Counsel did, however, point out to the judge that there was a lingering concern that one of the jurors was "a little less than forthcoming," but counsel did not know which juror that was. 

 The defendant's sole ineffective assistance argument is that counsel should have objected to the fact that the judge failed to determine which juror made the statement at issue and that failing to do so was manifestly unreasonable and warrants a new trial. The defendant did not raise this claim through the preferred method of a motion for a new trial accompanied by affidavits, and thus he presents his claim "in its weakest form because it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight" (quotations and citation omitted). Commonwealth v. Diaz, 448 Mass. 286, 289 (2007).

 "[T]he burden of proving ineffectiveness rests with the defendant." Commonwealth v. Kolenovic, 471 Mass. 664, 673 (2015), quoting Commonwealth v. Montez, 450 Mass. 736, 755 (2008). A defendant is denied constitutionally effective assistance of counsel and entitled to a new trial if counsel's representation fell "measurably below that which might be expected from an ordinary fallible lawyer," and that such performance "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Additionally, the defendant must show that "better work might have accomplished something material for the defense." Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977). Here, our conclusion that the trial judge acted within his discretion when deciding that the jury were impartial is fatal to the defendant's ineffective assistance claim. Moreover, "[i]t is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal chance of success." Commonwealth v. Clemente, 452 Mass. 295, 327 (2008), cert. denied, 555 U.S. 1181 (2009), quoting Commonwealth v. Howell, 394 Mass. 654, 658 (1985). Trial counsel's colloquy with the judge revealed trial counsel's belief that he had no good faith reason to object or move for a mistrial. Trial counsel's decision not to object or move for a mistrial was a tactical decision, and it was not manifestly unreasonable when made. See Commonwealth v. Hudson, 446 Mass. 709, 716 (2006) (tactical decisions are not ineffective assistance of counsel unless manifestly unreasonable when made). Additionally, assuming without deciding that failing to object or move for a mistrial was error, the defendant has not demonstrated prejudice. 

 For the reasons stated above, we affirm the judgments.

 Judgments affirmed.

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.