NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-200

COMMONWEALTH

vs.

PEDRO GOMEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this consolidated appeal of nine indictments joined for trial in the Superior Court, we review the defendant's claims of error associated with three convictions of attempted burglary in violation of G. L. c. 274, § 6, and the denial of his motion for a new trial.  Because we discern no error, we affirm.

Discussion.  1.  Sufficiency of evidence of "overt acts." We first address the defendant's claims that there was insufficient evidence to show that he committed the "overt acts" required to support three of his attempt convictions.  We review these claims of insufficient evidence to determine if, when "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"

(quotation omitted).  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

In October of 2015, the Millbury Police Department and the police departments of surrounding towns began an investigation into recent house breaks.  The police focused on the defendant as his car was seen in several locations close to recent house breaks.  Police used a Global Positioning Satellite (GPS) device to track the defendant's car.[1]  Once the GPS device was attached to the defendant's car, the police could track its movement in real time using a cell phone or laptop computer.

On November 3, 2015, just after 7 P.M., Sergeant Kimberly Cadrin of the Millbury Police Department was alerted by text that the defendant's car was in motion.  She, along with other police officers, began to monitor the defendant's movements both through the GPS tracking device and by following the defendant in their unmarked police vehicles.  Sergeant Cadrin and Lieutenant David Perry of the Sutton Police Department drove in an unmarked police vehicle to the location indicated by the GPS tracker.  At about 9 P.M. they saw the defendant driving alone in his car on Summer Street in Worcester.  The defendant's driving was unusual.  Instead of taking a direct route to his

---

[1] The two warrants the police obtained allowing their use of the GPS device are discussed, infra, in relation to the defendant's other claims.

2

destination he drove on and off highways in a circle, down dead-end roads, and his speeds were erratic.  At times, in order to avoid being discovered by the defendant, Sergeant Cadrin stayed far behind the defendant's car, losing sight of the car and following his movements only by the GPS.  Police continued to monitor the car's movement and saw the defendant's unoccupied car parked on a dirt road leading to a pig farm in Millbury at around 9:15 P.M.  Lieutenant Perry attempted to follow the defendant on foot.  He saw a person walking towards the parked car, enter the car, and drive away.  Due to the darkness, he could not identify the driver of the car, but continued to track the car using GPS.

The GPS recorded that the defendant's car stopped near 42 Tainter Hill Road in Millbury.  Lieutenant Perry got out of the unmarked police vehicle and hid in some shrubbery so he could better observe the defendant.  Lieutenant Perry saw the defendant exit his car and walk to the backyards of homes located at 40 and 42 Tainter Hill Road.  While remaining hidden, Perry observed the defendant inside the attached screened-in door of 40 Tainter Hill Road, cross into the backyard of 42 Tainter Hill Road, and then return to his car and drive away.  Later investigation revealed that the screened-in porch door of 42 Tainter Hill Road was ajar and the screen was sliced near the locking mechanism.  Using "Jaxx," a K-9 dog, police tracked

3

human scent from the area where the defendant's car had been parked to the left side of and backyard of 40 Tainter Hill Road and to the front of 42 Tainter Hill Road, following the path the defendant had followed while being watched by Lieutenant Perry.

Two days later, on November 5 at about 7:30 P.M., police were alerted by the GPS that the defendant's car was in motion in the town of Shrewsbury. After locating the defendant's unoccupied vehicle at the corner of Mangs Drive and Rockwell Drive, various police departments set up surveillance in the neighborhood. About 10 P.M., a residential house alarm sounded at 2 Mangs Drive and the defendant was seen walking off the back deck area of the home. He was taken into custody and was found to have a bag of small wooden dowels, a blue rag, and approximately $288 in cash in various denominations with him.

The K-9 unit returned with Jaxx, who tracked human scent from the area of the defendant's parked car to several homes in the area. At most of these homes, the police observed either damage consistent with an attempted house break or evidence suggesting that the defendant had been immediately outside the home. Specifically, at 7 Heywood Street the officer saw "obvious damage" to the rear door; at 9 Heywood Street the officer saw a piece of wood from the window trim, small wooden dowels on the ground, and the garage window completely open; at 17 Heywood Street the officer observed damage to the residence;

4

at 23 Farmington Drive Jaxx alerted the officer to a garage door; at 30 Rockwell Drive a screen door was forced open and the sliding door underneath the rear porch was partially open; at 32 Farmington Drive Jaxx alerted the officer to the rear door, which appeared to have been forced open; at 37 Farmington Drive a screen from a rear window was on the ground and had fresh cut marks. Jaxx also tracked the scent to a sliding door at 2 Mangs Drive, the home at which the police had seen the defendant after an alarm had been triggered there. Police spoke to several homeowners in the area about their observations that night. The homeowner at 7 Heywood Street noticed that the handle to the sliding door in his screened in porch was loose and the door ajar. The homeowner at 23 Farmington Drive eventually noticed that she was missing $150 in cash from her wallet that was inside her parked car in the garage. Finally, the homeowner at 32 Farmington Drive saw the slider door to her patio was broken.

In order for a fact finder to convict a defendant of attempted burglary, the Commonwealth must prove beyond a reasonable doubt that the defendant made an "attempt[] to commit a crime," G. L. c. 274, § 6, by "engag[ing] in some overt act toward the commission of a crime with the intent to commit that crime" (quotation omitted). Commonwealth v. Graham, 62 Mass. App. Ct. 642, 645 (2004). The defendant claims that there was insufficient evidence to show that he committed the "overt acts"

5

required to prove him guilty of attempted burglary of 30 Rockwell Drive, 37 Farmington Drive, and 17 Heywood Street.[2] As we note above, the defendant challenges only the sufficiency of the evidence that he committed the required "overt acts."

The jury could have found that on November 5 the defendant's unoccupied car was tracked to the area of the break-ins. The defendant was apprehended in a quiet residential area late into the night. The defendant was apprehended when a house alarm alerted in the near vicinity, and police found him walking off the back porch of the property near these other homes. When searched, the defendant had cash, a blue rag, and several small wooden dowels with him. Additionally, Jaxx tracked human scent from the defendant's parked car to a series of homes in the neighborhood at issue in this appeal. At each of those homes, the police found additional evidence of "overt acts" in furtherance of a break-in: at 30 Rockwell Drive, there was a screen door that appeared to have been forced open and the sliding door was partially open; at 37 Farmington Drive, police noticed a screen from a rear window on the ground with fresh cuts; and there was damage to the house at 17 Heywood Street. See Commonwealth v. Dykens, 473 Mass. 635, 643-644 (2016) (moving ladder, removing outer window screen, and damaging

---

[2] Indictments numbered 16-0066-4, 16-0066-5, and 16-0066-8.

window with a rock "fit squarely within the definition of an overt act").  The police also found evidence, in addition to Jaxx's identification of a human scent trail, that the defendant had been in these areas -- small wooden dowels were found both outside the home located at 9 Heywood Street and in the defendant's possession.

We conclude that this evidence, although circumstantial, was sufficient to support the convictions of attempted burglary. See Commonwealth v. Gilbert, 423 Mass. 863, 868 (1996) ("circumstantial evidence is competent to establish guilt beyond a reasonable doubt").  It was permissible for the jury to consider the evidence as a whole, along with the reasonable inferences to be drawn from it, to determine if the defendant attempted to break and enter into each of the homes in the area. See Commonwealth v. Harmon, 63 Mass. App. Ct. 456, 465 (2005).

2.  Motion for new trial.  a.  Standard.  The defendant's next arguments are based upon his claim that the motion judge erred in denying his motion for a new trial.[3]  "We review a motion judge's decision [to deny a motion for new trial] 'only to determine whether there has been a significant error of law or other abuse of discretion.'"  Commonwealth v. Hernandez, 63

---

[3] We note that while trial counsel raised the issue of dismissal of one of the indictments, this argument was not raised by appellate counsel.

7

Mass. App. Ct. 426, 430 (2005), quoting Commonwealth v. Grace, 397 Mass. 303, 307 (1986).  Mostly, our courts give "great deference" to a judge's decision on a motion for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), especially when, as here, the motion judge also was the trial judge.[4]  Commonwealth v. Pagels, 69 Mass. App. Ct. 607, 615 (2007).

b.  Trial evidence.  During pretrial discovery, the Commonwealth was alerted to the fact that the GPS unit placed on the defendant's car was not reset after daylight savings time reverted to standard time, which occurred at 2 A.M. on November 1, 2015, and that, as a result, the times indicated in the data generated by that GPS unit from that point on were one hour ahead of the actual time.  The prosecutor provided this information to the defendant's trial counsel, who in turn hired an expert to analyze the GPS data.  Despite notifying defendant's trial counsel of the issue, the prosecutor did not clarify the time discrepancies at trial and when the police officers called as trial witnesses testified to the times of their observations and actions after November 1, their testimony was consistent with the GPS data, rather than the actual time.

---

[4] The trial judge conducted a full evidentiary hearing with one witness called by the defense.

8

In his motion, and now on appeal, the defendant argued that by failing at trial to correct this one hour discrepancy, the prosecutor knowingly presented false testimony to the jury, thereby requiring reversal of the convictions. We discern no abuse of discretion in the judge's decision to reject that argument.

To be certain, the Commonwealth may not introduce evidence or testimony at trial "which he or she knows or should know is false." Commonwealth v. Sullivan, 410 Mass. 521, 532 (1991). Here, nothing in the record indicates that either of the witnesses knowingly gave false testimony or that the prosecutor knowingly elicited false testimony. Compare Commonwealth v. Forte, 469 Mass. 469, 491 (2014) (minor inconsistencies do not constitute falsities). The prosecutor's lack of any intent to mislead is apparent from the fact that the Commonwealth provided the information about the inaccuracy of the GPS time data to defense counsel before trial. Further, to the extent the evidence was misleading to the jury, there was no prejudice, because nothing in either the Commonwealth's case or the defendant's defense turned on the precise times of the witness's observations. We are satisfied that there was no error in the denial of the motion for a new trial. Compare Commonwealth v. Ware, 482 Mass. 717, 725-730 (2019) (officer testimony that defendant stated he was extremely close to scene of crime

9

required reversal because testimony was "blatantly false" and central to prosecution's case).

3. Ineffective assistance of counsel. Alternatively, the defendant argues that trial counsel was ineffective by failing to: file a motion to dismiss the November 3 indictments due to false grand jury testimony given by Sergeant Cadrin; file a motion to suppress the fruits of the second warrant; impeach the credibility of the police about the one hour time discrepancy with the GPS tracker; and object to the joinder of the defendant's case relating to his actions on November 3 with a separate case relating to his actions on November 5. We address each argument in turn.

a. Standard. We start with the familiar standard for ineffective assistance of counsel set forth in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). We look to see "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found . . . whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Id. We review for an abuse of discretion or any other error of law. Commonwealth v. Lane, 462 Mass. 591, 597 (2012). In cases such as this where the trial judge and the motion judge are the same, "we extend special deference to the

10

judge's findings of fact and the ultimate decision on the motion for a new trial" (quotation omitted).  Commonwealth v. Moore, 489 Mass. 735, 744 (2022).

b.  Failure to file motion to dismiss.  We discern no abuse of discretion in the judge's determination that the defendant's trial counsel was not ineffective in moving to dismiss the indictments against the defendant on the grounds that the Commonwealth had presented knowingly false testimony at the grand jury.  Although Sergeant Cadrin testified before the grand jury that she "observed" the defendant at certain times during that evening -- testimony that was likely based on the GPS data the Commonwealth ultimately learned was off by one hour, as we have already discussed -- the defendant's showing did not require the judge to conclude that her testimony was "false."

First, as a practical matter, the record is clear that the GPS issue was not identified until after the grand jury presentment.  There is no evidence that at the time of her grand jury testimony either the Commonwealth or Sergeant Cadrin had any knowledge that her testimony was inaccurate, let alone false.  "[I]naccurate statements made in good faith do not require dismissal of an indictment."  Commonwealth v. Mayfield, 398 Mass. 615, 620 (1986).

Because the defendant failed to offer any evidence that the Commonwealth made "knowing use of false testimony," Commonwealth

11

v. Salman, 387 Mass. 160, 167 (1982), and because dismissal is warranted only when the evidence shows deliberate and intentional constitutional violations, he also failed to show a likelihood of success on a motion to dismiss the indictments. See Commonwealth v. Reddington, 395 Mass. 315, 319-320 (1985) (motion to dismiss indictments properly denied where police officer's grand jury testimony was inaccurate but made in good faith). The judge was therefore within his discretion when he denied the motion for new trial on this basis. Failure to pursue a futile motion is not ineffective assistance of counsel. Commonwealth v. Vieux, 41 Mass. App. Ct. 526, 527 (1996), cert. denied, 520 U.S. 1245 (1997).

c. Failure to file a motion to suppress evidence obtained from the second search warrant. In order to track the defendant's vehicle, the police obtained two search warrants. On October 10, 2015, Sergeant Cadrin obtained the first warrant (first warrant) authorizing the police to track the defendant using a GPS device attached to the defendant's car. Sergeant Cadrin obtained a second warrant on October 23, 2015 (second warrant), to extend the time allowed to track the defendant with the GPS device.

The defendant's first trial counsel filed a motion to suppress the evidence from the issuance of the first search warrant, claiming that it lacked probable cause. Another motion

12

judge heard arguments and denied the motion.  Counsel now claims that successor trial counsel was ineffective in failing to file a motion to suppress the evidence obtained from the second warrant.  At the evidentiary hearing, counsel was aware that prior counsel had filed a motion to suppress, which was fully litigated.  Since the second search warrant was only an extension of time for the GPS surveillance, and the affidavit in support of the second warrant had even more information to establish probable cause, filing a second motion would have been futile.  See Commonwealth v. Hanson, 79 Mass. App. Ct. 233, 237 (2011), quoting Commonwealth v. Comita, 441 Mass. 86, 91 (2004) ("[I]n order to prevail on an ineffective assistance of counsel claim on the ground of failing to file a motion to suppress, the defendant has to demonstrate a likelihood that the motion to suppress would have been successful").

d.  Failure to impeach witnesses based on one hour time discrepancy.  As we have discussed, despite the information in the Commonwealth's file about the fact that the GPS time needed to be adjusted to account for the reversion of daylight savings to standard time, at trial Sergeant Cadrin and Lieutenant Perry did not adjust the time in which they testified they observed the defendant.  The defendant's trial counsel did not impeach the witnesses based on the one hour time discrepancy in the GPS data.  At the evidentiary hearing on the motion for a new trial,

13

the defendant's trial counsel[5] testified that his pretrial review of the GPS data satisfied him that it was otherwise accurate and strongly linked the defendant to the crimes. He testified that to have focused the jury on the GPS evidence would only have highlighted the strength of that link. In his opinion, the GPS data was devastating to his client, so his strategy at trial was to attempt to create reasonable doubt by emphasizing the Commonwealth's failure to offer any scientific evidence, such as fingerprints or DNA from the scene, to connect the defendant to the crimes. Highlighting the GPS data would have likely hurt that defense.

"Where, as here, the defendant's ineffective assistance of counsel claim is based on a tactical or strategic decision, the test is whether the decision was 'manifestly unreasonable' when made." Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015), quoting Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006). We discern no abuse of discretion or other error in the motion judge's conclusion that the defendant failed to show that his trial counsel's strategy was manifestly unreasonable or deprived him of a defense.

e. Failure to file a motion to sever. Next, appellate counsel claims that trial counsel was ineffective in failing to

_____

[5] Trial counsel had practiced criminal law for over twenty years.

14

file a motion to sever the two sets -- those pertaining to the defendant's actions on November 3 and November 5, respectively -- of indictments. In most instances, the decisions relating to joinder and severance are left to the sound discretion of the trial judge. Commonwealth v. Diaz, 448 Mass. 286, 290 (2007). An ineffective assistance of counsel claim that is based on the failure to file a motion to sever requires the defendant to show that the motion would likely have been granted. Id. at 289. See Commonwealth v. Bly, 444 Mass. 640, 654 (2005). The indictments in this case related to a "series of criminal episodes connected together or constituting parts of a single scheme or plan," Mass. R. Crim. P. 9 (a) (1), 378 Mass. 859 (1979), and were, on that basis, joined for trial. Responding to the defendant's posttrial claim that he provided ineffective assistance in failing to move to sever the indictments, defense counsel testified that he made a strategic choice not to do so because he was aware that the evidence of the conduct underpinning one set of indictments would likely be admissible in the trial of the other indictments. Additionally, he testified to his opinion that if the defendant were convicted in two separate trials, he risked more severe punishment if convicted in either or both. On this record, we cannot say the

15

motion judge abused his discretion in concluding that trial counsel's decision was not manifestly unreasonable.

Judgments affirmed.

Order denying motion for new
   trial affirmed.

By the Court (Sullivan,
   Hand & Walsh, JJ.[6]),

*Joseph F. Stanton*

Clerk

Entered:  April 4, 2023.

---

[6] The panelists are listed in order of seniority.