NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1278

COMMONWEALTH

vs.

LUIS GUILLERMO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, Luis Guillermo (defendant), was convicted of trafficking in heroin (100-200 grams) in violation of G. L. c. 94C, § 32E (c), and distribution of heroin (a Class A substance) in violation of G. L. c. 94C, § 32 (a). On appeal, the defendant argues (1) that his trial counsel was ineffective for admitting and failing to suppress his statement to police upon arrest; (2) that the trial judge erroneously admitted an AFIS print card in evidence; and (3) that the trial judge erroneously allowed a police officer to interpret notes written in Spanish while testifying. We affirm.

Background.  The following evidence was introduced at trial.

1.  Surveillance and arrest.  Worcester police officers were conducting surveillance in the area of 106 Sterling Street on October 23, 2014.  They focused on a Nissan Maxima parked outside the house at 106 Sterling Street.  The officers saw a man, later identified as Francisco Batista, leave the house and enter the driver's seat of the Maxima.  Batista drove the Maxima to Wilson Street as the officers followed.  The Maxima stopped on Wilson Street, where an unidentified man walked out of a house and entered the front passenger's seat.  Approximately ten seconds later, the man got out of the Maxima and returned to the house.  The Maxima drove away, and the officers followed until they lost sight of the Maxima and returned to 106 Sterling Street.  Eventually, the Maxima also returned to 106 Sterling Street.  Another man, later identified as the defendant, then walked out of the house and entered the front passenger's seat of the Maxima.  The officers followed the Maxima to Raymond Street, where it parked behind a black pickup truck.  The defendant got out of the Maxima and entered the passenger's seat of the truck.  Both vehicles then drove to Esther Street, where they both parked approximately 30 seconds later.  The defendant got out of the truck, got back in the passenger's seat of the Maxima, and then both vehicles drove away.  One officer

2

characterized this brief drive as a "meaningless ride," and the Commonwealth introduced expert testimony that "meaningless rides" are typical of drug transactions.

Thereafter, the officers then chose to discontinue surveillance of the Maxima.  Meanwhile, other officers stopped the truck and discovered the driver attempting to swallow a plastic baggie containing approximately ten small bags of heroin.  These officers reported their observation to the officers who had been following the Maxima, who then returned to 106 Sterling Street.

Ten to twenty minutes later, the Maxima drove past 106 Sterling Street, and the officers followed it to Diamond Street. At this point a different pickup truck began following the Maxima, and the officers decided to stop the Maxima.  The officers approached and ordered the occupants out of the car. Mr. Batista was driving, and the defendant was in the front passenger's seat.  They were placed under arrest for distribution of heroin.  The officers did not read the defendant his Miranda rights upon arrest, but did ask him "a couple brief questions" including whether he had just come from 106 Sterling Street, which the defendant denied.

The officers pat frisked the defendant.  They discovered approximately $400 in his pocket and about $900 in his wallet. They also recovered approximately $400 in the passenger's side

3

of the car.  Inside the car, seven cell phones were "ringing constantly."  The officers also seized the keys from the Maxima's ignition, which they brought back to 106 Sterling Street and used to gain access to the 3rd floor apartment.

2.  Evidence found inside 106 Sterling Street.  Upon entering Apartment 3 at 106 Sterling Street, the officers found and detained two occupants.  After securing the apartment, the officers applied for a search warrant and obtained permission to search it for evidence of drug dealing.  During the search, the officers discovered suspected drug packaging material in the kitchen, a notebook containing what the jury could infer were "crib notes" with the defendant's name on the back inside cover, approximately $9,000 in additional cash throughout the home, a "chunk" of heroin stored in a cabinet, as well as an additional baggie of heroin and a shoebox with $1,371 in cash in the defendant's bedroom closet.  The police later developed seventeen latent prints on various pieces of evidence seized from the apartment.

3.  AFIS print card.  The Commonwealth introduced an AFIS[1] print card as evidence of the defendant's "known prints," in

_____

[1] AFIS stands for Automated Fingerprint Identification System.  It is a database that contains fingerprints taken upon arrest, as well as those taken for the purpose of background checks for employment or other non-criminal justice purposes.  U.S. Department of Justice, Federal Bureau of Investigation, Criminal Justice Information Services Division, The Integrated

4

support of its claim that the defendant's palm print was found on drug packaging materials in the kitchen of the apartment.[2] The AFIS card contained no identifying information[3] beyond the name "Luis Guillermo."  In questioning the Commonwealth fingerprint expert, the prosecutor described the prints on the AFIS card as "inked prints," implying that they had been created with ink on paper.  The expert then testified that in the booking process, the Worcester Police Department takes fingerprints with a digital scanner called "live scan," "without the mess of the ink."  The expert did not know whether or not the AFIS prints were created upon the defendant's arrest.  The trial judge admitted the AFIS print card over the defendant's objection that it was inadmissible unless the Commonwealth called the booking officer who took the defendant's prints.

4.  <u>The notebook</u>.  The blue notebook that police recovered from the apartment contained hand-written notes in Spanish.

---

Automated Fingerprint Identification System (August 2008), https://ucr.fbi.gov/fingerprints_biometrics/biometric-center-of-excellence/files/iafis_0808_one-pager825.

[2] Specifically, the Commonwealth's fingerprint expert compared a latent print recovered from drug packaging material to a print on the AFIS card and concluded that the latent print was identified as the defendant's print.

[3] The AFIS print card has spaces to record an "identification number," as well as the subject's middle name, and the signature and ID number of the official taking the prints.  All of those spaces were left blank.

Officer Larry Williams, who is bilingual, translated certain phrases from the notebook from Spanish to English. Specifically, Officer Williams testified that one sentence in the notebook read, "Piso was given one hundred.". He then opined that this phrase could be a reference to "money or an amount of drugs." Officer Williams also described a second sentence as signifying that "Somebody was sent to get 50 grams more." He then opined that this "would definitely be referring to drugs." Defense counsel did not object to these translations or opinions.

Discussion. 1. <u>The defendant's answer to police questioning</u>. On cross-examination of the arresting officer, defense counsel elicited testimony that he asked the defendant whether he had just come from 106 Sterling Street, and that the defendant said no. On appeal, the defendant argues that this line of questioning, and his counsel's failure to seek suppression of the defendant's statement, introduced inculpatory evidence, and thus violated his constitutional right to the effective assistance of counsel.

Our inquiry generally with respect to claims of ineffective assistance of counsel is "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is

6

found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defen[s]e." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). "When a defendant alleges that his attorney committed a strategic error, . . . we consider whether trial counsel's tactical choice was manifestly unreasonable at the time the choice was made." Commonwealth v. Velez, 479 Mass. 506, 512 (2018). "A strategy is manifestly unreasonable if lawyers of ordinary training and skill in the criminal law would [not] consider [it] competent" (quotation and citation omitted). Id. Where trial counsel's tactic was manifestly unreasonable, his representation is ineffective if it created a substantial risk of a miscarriage of justice. Commonwealth v. Randolph, 438 Mass. 290, 295-296 (2002).

"[T]he preferred method for raising a claim of ineffective assistance of counsel is through a motion for new trial." Commonwealth v. Zinser, 446 Mass. 807, 810 (2006). The defendant raises this claim of ineffective assistance on direct appeal, based solely on the trial record. Such an ineffective assistance claim necessarily lacks "any explanation by trial counsel for his actions" and as such, must overcome the "suggesti[on] of strategy contrived by a defendant viewing the case with hindsight" (quotation and citation omitted). Commonwealth v. Diaz, 448 Mass. 286, 289 (2007). The defendant

7

may overcome this suggestion if "the factual basis of the [ineffective assistance] claim appears indisputably on the trial record."  Id.

The defendant's appellate counsel contends that "the factual basis of the ineffective assistance claim appears indisputably on the trial record" because the defendant's denial that he was coming from 106 Sterling Street was "a damning lie" and thus incriminating and prejudicial.  We disagree.

In fact, the defendant later testified that after initially leaving 106 Sterling Street, he got in the Maxima and drove to a work site, where he stayed for about 20-25 minutes.  He testified that Batista returned in the Maxima and picked him up, that they drove back towards 106 Sterling Street, and that the police eventually stopped them.  This chronology was consistent with the defendant's statement to the arresting officer that he was not coming from 106 Sterling Street.  Moreover, it was consistent with the officer's testimony describing the brief pause in their surveillance of the Maxima when they drove back to 106 Sterling Street.

Accordingly, based on the trial record, we conclude that the basis of this ineffective assistance claim does not "appear[] indisputably on the trial record."  Diaz, 448 Mass. at 289.  Therefore, we decline to reach it.

8

2. <u>AFIS print card</u>. The defendant asserts that the admission of the AFIS print card over his objection was prejudicial error. We disagree.

First, we note that while trial counsel objected to the "known print card" being admitted into evidence, he did not state a specific evidentiary basis for his objection. Rather, trial counsel objected because the booking officer who took the defendant's prints had not testified. The trial judge characterized this as a "chain of custody issue" and trial counsel then objected on that basis.[4] On appeal, the defendant claims that his trial counsel objected to the admission of the print card on the grounds of authentication, hearsay, and relevance.[5] For its part, the Commonwealth concedes that the prosecutor did not lay the proper foundation to admit the print card as a business record but notes that the defendant did not

---

[4] The best practice is to state a specific ground for an objection in order to preserve the issue for appeal, unless the basis for the objection is apparent from the context. Mass. G. Evid. § 103(a)(1)(B) (2025).

[5] Given the lack of biographical information on the AFIS print card beyond the name "Luis Guillermo" and the possibility that it was not created during booking by the Worcester Police Department, it seems plausible that the card was not properly authenticated as belonging to the defendant and therefore was irrelevant in the absence of testimony from someone who could link the prints on the card to the defendant, e.g., the officer who booked the defendant and took his prints. See <u>Commonwealth</u> v. <u>Welch</u>, 487 Mass. 425, 440 (2021), citing Mass. G. Evid. § 901(a).

object on this ground at trial, and argues that the admission of the print card should therefore be reviewed only to determine whether it created a substantial risk of a miscarriage of justice. In any event, the parties agree that the AFIS card was admitted in error.

Accepting for the sake of argument that the print card was erroneously admitted, and that the defendant is entitled to review under the more favorable prejudicial error standard, we conclude that the error was not prejudicial. "An error is not prejudicial if it did not influence the jury, or had but very slight effect." Commonwealth v. Cruz, 445 Mass. 589, 591 (2005), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

Very simply, the evidence that the defendant was distributing heroin was overwhelming. Accordingly, we conclude that the admission of the print card did not influence the jury or had but very slight effect.

A police officer testified that he witnessed the defendant engage in at least one meaningless ride with a person who had ten packets of heroin immediately after the defendant left his truck. Shortly thereafter, the officers arrested the defendant and found $1,300 on his person and another $400 in the passenger's side of the car, where he had been sitting. They also found seven cell phones that were "ringing constantly."

10

Then, when they searched his apartment, they found drug packaging material, a notebook containing possible "crib notes" with the defendant's name on the back inside cover, approximately $9,000 in cash, and a "chunk" of heroin. Finally, the officers found additional heroin and a shoebox with $1,371 in cash in the defendant's bedroom closet.[6] In light of this overwhelming evidence that the defendant was involved in a heroin trafficking operation, we conclude that testimony linking the palm print on the plastic bag in the kitchen to the defendant through the AFIS card at most "had but very slight effect" (citation omitted) on the jury's verdict. Cruz, 445 Mass. at 591.

3. Notebook translation. For the first time on appeal, the defendant challenges the admission of testimony about the contents of the notebook found in the apartment. Because the defendant did not make a timely objection to this testimony, we review it only to determine whether its admission was error and if so, whether it created a substantial risk of a miscarriage of justice. See Commonwealth v. Brown, 479 Mass. 600, 609-610 (2018). The substantial risk standard requires the court to determine "if we have a serious doubt whether the result of the

---

[6] The Commonwealth presented evidence that the heroin found in the apartment weighed in excess of one hundred grams.

11

trial might have been different had the error not been made" (citation omitted).  Commonwealth v. Desiderio, 491 Mass. 809, 810 (2023).

Assuming without deciding that the judge erred by admitting Officer Williams's translations, we examine whether any such error created a substantial risk of a miscarriage of justice. The defendant testified and offered his own translation of the words that Officer Williams translated.  The defendant's own translation was substantially the same as the officer's save for the officer's reference to "50 grams."  Again, in light of the overwhelming evidence against the defendant, this single additional reference to "50 grams" did not create a substantial risk of a miscarriage of justice.

Judgments affirmed.

By the Court (Sacks, Smyth & Wood, JJ.[7]),

Clerk

Entered:  October 30, 2025.

_____

[7] The panelists are listed in order of seniority.

12